746 P.2d 163

**AMBASSADOR EAST APTS., INVESTORS, a limited partnership, Plaintiff–Appellant,**

v.

**AMBASSADOR EAST INVESTMENTS, a New Mexico partnership; R.J. Schaefer, Defendants–Appellees,**

**and**

**Mechenbier–Fleming Investment Real Estate, Inc., a New Mexico corporation, Defendant.**

**No. 9272.**

Court of Appeals of New Mexico.

Nov. 5, 1987.

Henry G. Coors, IV, Coors & Ginsburg, Albuquerque, for plaintiff-appellant.

Burton F. Broxterman, Albuquerque, for defendant-appellee Ambassador East Investments.

Alfred L. Green, Jr., Butt, Thornton & Baehr, P.C., Albuquerque, for defendant-appellee R.J. Schaefer.

## OPINION

GARCIA, Judge.

### FACTS

Plaintiff, Ambassador East Apts., Investors (Investors) brought suit against Ambassador East Investments (the Mhoon group), R.J. Schaefer, a real estate broker, and Mechenbier–Fleming Investment Real Estate, Inc., the selling broker, for intentionally and negligently misrepresenting the amount of square footage contained in the Ambassador East Apartments (apartments) in Albuquerque, New Mexico. Investors, a general partnership, was comprised of four partners, Thomas B. Hunt, Edwin Gailbreath, W. Dean Koop, and Dr. Robert Castillo.

In 1978, the Mhoon group decided to sell the apartments. They retained Schaefer as their real estate broker. An appraisal of the apartments was prepared on behalf of Schaefer for a potential buyer, Bill Smith. The appraisal stated that the rentable area of the apartments was 118,500 square feet. Schaefer gave a copy of the appraisal to Mechenbier, who placed it in the Ambassador Apartments file.

In late 1978, Investors purchased the apartments. At closing, Hunt viewed an expanded copy of the appraisal. In August 1978, before closing, Investors prepared a prospectus on the apartments, offering specific individuals the opportunity to invest in the apartments, as limited partners. That same month, the proposed investors expressed concern as to whether the apartments had 118,500 square feet rentable area. Accordingly, Gailbreath asked Leon Mhoon, a general partner of the Mhoon group, about the square footage in the apartments, and Mhoon informed him that the apartments contained 118 units averaging 1,000 square feet per unit. Mhoon said the apartments totalled 118,500 square feet rentable area.

In 1983, Investors decided to sell the property and subsequently received an offer from Lincoln properties. During the course of negotiations, Lincoln obtained an independent appraisal of the apartments. The appraisal revealed the apartments included 100,049 square feet of rentable area and not 118,500. Accordingly, Lincoln lowered its offer by $475,000.

Subsequently, on January 31, 1984, Investors filed suit against the Mhoon group, Schaefer and Mechenbier–Fleming. Mechenbier–Fleming settled with Investors. Defendants Schaefer and the Mhoon group moved for summary judgment, arguing that Investors' cause of action was barred by the statute of limitations. The district court entered summary judgment in their favor. Investors appealed.

### ISSUE

The sole issue on appeal is whether prior to January 31, 1980, Investors knew or

should have known that the square footage of the apartments as represented by the Mhoon group was incorrect and, thus, the suit was barred by the statute of limitations.

## DISCUSSION

The statute of limitations for fraud in New Mexico is four years. NMSA 1978, § 37–1–4. The statute of limitations does not begin to accrue, however, until the fraud is discovered by the aggrieved party. NMSA 1978, § 37–1–7. Discovery is generally defined as "discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of fraud." *Romero v. Sanchez*, 83 N.M. 358, 361, 492 P.2d 140, 143 (1971).

The statute of limitations here commences to run from the date Investors acquired actual knowledge of the fraud. Absent actual knowledge, however, a reasonable-person standard will be applied as to whether Investors should have known of the fraud, in which event the difficulty of the case and the complexity of the facts, combined with Investors' sophistication, becomes the test in determining when Investors "knew" of such fraud. *Jones v. Ford Motor Co.*, 599 F.2d 394 (10th Cir.1979); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir.1974). Hence, in determining when Investors acquired constructive knowledge of the fraud, the court may properly consider the individual expertise and sophistication of Investors. *Id.*

In the present case, it is undisputed that both Hunt and Gailbreath investigated and purchased the property for the purpose of putting together a real estate partnership. There was evidence that both Hunt and Gailbreath, at the time of purchase, were learned in the area of real estate investment, financing, and purchase. In fact, a prospectus on the apartments, prepared by Hunt, portrayed both Hunt and Gailbreath as real estate experts.

Hunt, a non-practicing attorney, was a certified New Mexico real estate broker and, prior to the Ambassador purchase, had been involved in the purchase of five other apartment complexes. In fact, Hunt was both a selling broker of the apartments and a general partner in Investors. At the time of purchase Hunt personally inspected the property, together with the books and records concerning the apartments. At closing, Hunt viewed an expanded copy of the appraisal that clearly and correctly indicated the number of rentable square feet in the apartments. At deposition, Hunt testified that he had no problem reading the numbers on the survey. With little effort, and on reasonable diligent investigation, Hunt could easily have determined from the appraisal that the rentable area in the apartments was not 118,500 square feet as represented. *See Romero v. Sanchez; Jones v. Ford Motor Co.* Hunt, however, failed to investigate.

Most damaging though, is Gailbreath's own deposition testimony. Referring to a visit to the apartments made in August 1978, Gailbreath testified as follows:

Q Did you have any problems or concerns about the apartment complex at that time?

A On that day?

Q Yes.

A The only concern I had was what we had heard from other people [about] the number of square feet that was there.

Q And why was that a concern?

A *We weren't sure there were 118,500.* (Emphasis added.)

Thus, Gailbreath, through his own admission, acknowledged that in August 1978, prior to purchasing the apartments, he was concerned about the square footage of rentable area in the apartments. Gailbreath, however, also failed to investigate.

Every partner is an agent of the partnership for purposes of its business. NMSA 1978, § 54–1–9(A); *Dotson v. Grice*, 98 N.M. 207, 647 P.2d 409 (1982). As we have indicated, Hunt and Gailbreath purchased the property on behalf of the partnership. Thus, Hunt's access to the survey and Gailbreath's individual concern about the rentable area was imputed to all the partners.

Investors' reliance on *Gaston v. Hartzell*, 89 N.M. 217, 549 P.2d 632 (Ct.App. 1976) is misplaced. Although some of the facts in *Gaston* are similar to those in the case at bar, the property purchased in *Gaston* was a residence and the buyers were not real estate experts. In determining that plaintiff's suit was not barred ·by the statute of limitations, the court noted that "[n]othing in the record shows that plaintiffs had any reason to raise an issue as to the square footage of the residence until they attempted to sell the property." *Id.* at 220, 549 P.2d at 635. Such is not the case, here, where the property purchased was an apartment complex and the buyers were sophisticated and educated in real estate investments. Further, as early as August 1978, Gailbreath was concerned that the square footage of rentable area in the apartments was not as represented.

Investors' reliance on *Ramsey v. Culpepper*, 738 F.2d 1092 (10th Cir.1984) is similarly misplaced. *Ramsey* involved a property owner's fraud and negligence claim against a real estate rental agent who had negotiated a lease affecting the owner's property in Farmington. The owner contended the agent breached his duty by not leasing the property for its fair rental value, by not providing owner more favorable rental terms and conditions and by not protecting owner's interest. The agent moved for summary judgment and, subsequently, for a directed verdict contending the claim was barred by the statute of limitations. The trial court denied both motions and the agent appealed.

In determining that the trial court acted properly in denying the motion for a directed verdict, the *Ramsey* court noted that the rental agent was acting in a fiduciary capacity on behalf of owner and that owner was extremely dependent on the agent. The court further noted that owner did not live in Farmington, was not familiar with the business practices in the area, and knew very little of the town's development since she had left in the early 1960's. Moreover, the court acknowledged that only a person knowledgeable about the Farmington rental market and negotiation and contract terms could determine with confidence whether the agent had acted negligently or fraudulently. The court concluded that these specific facts created a question of fact for the jury as to whether owner should have suspected fraud.

In the case at bar, the trial court was faced with quite the opposite situation. In August 1978, Gailbreath was informed by potential investors that the apartments might not contain 118,500 square feet rentable area. In determining whether Gailbreath had constructive notice of the misrepresentation at that time, we apply a reasonable-person standard considering both the difficulty of the case and the complexity of the facts combined with Gailbreath's sophistication. *See Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*

Here, both Hunt and Gailbreath claimed that the misrepresentation was not discovered until 1983. Given their backgrounds involving real estate investments, the purchase of other apartment complexes, the fact that an enlarged version of the survey was made available to Hunt before closing, the fact that Hunt was a commissioned broker in the sale of the apartments and Gailbreath's deposition testimony that in August 1978, he was concerned with the number of square footage rentable area in the apartments, the district court could properly determine as a matter of law that in August 1978 Investors knew or should have known of the Mhoon group's misrepresentation. *See Ramsey v. Culpepper.*

A trial court should not grant summary judgment if there is a "viable issue of fact" as to when the limitations period began. *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir. 1978). Whether or not there remains a "viable issue of fact", however, depends on the material presented to the trial court by the parties. *Id.* A mere scintilla of an issue is not sufficient to create a genuine issue of material fact sufficient to make summary judgment inappropriate. *Na-*

*tional Advertising Co. v. State ex rel. State Highway Comm'n*, 91 N.M. 191, 571 P.2d 1194 (1977). The test is whether there are sufficient material facts in controversy to create a genuine issue. *Id.* Such is not the case here.

## CONCLUSION

The statute of limitations here began running in August of 1978, and Investors' subsequent suit was barred by the statute of limitations. The district court is affirmed. No costs are awarded.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.