**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-085**

**Filing Date: August 13, 2010**

**Docket No. 28,632**

**TRYNA SAAVEDRA WILDE, as**
**personal representative of the Estate of**
**ROSALIA A. SAAVEDRA, deceased,**

      **Plaintiff-Appellant,**

**v.**

**WESTLAND DEVELOPMENT CO., INC.,**
**WESTLAND DEVCO, LLC, MELLON**
**INVESTOR SERVICES, INC., and**
**BARBARA PAGE,**

      **Defendants-Appellees,**

**and**

**NO. 29,071**

**TRYNA SAAVEDRA WILDE, as**
**personal representative of the Estate of**
**ROSALIA A. SAAVEDRA, deceased,**

      **Plaintiff-Appellant,**

**v.**

**RAYMOND ARANDA,**

      **Defendant-Appellee,**

**and**

**NO. 29,307**

**TRYNA SAAVEDRA WILDE, as**

1

**personal representative of the Estate of
ROSALIA A. SAAVEDRA, deceased,**

      **Plaintiff-Appellant,**

**v.**

**EMMA JARAMILLO, PATRICK
JOSE PERCHES, EPIMENIO L.
JARAMILLO, EMMA YOLANDA
JARAMILLO, LORRAINE MORALES,
DOMINIC CARLOS PERCHES, JOSE A.
PERCHES, JOSE A. PERCHES as custodian
of SARA ESTANESLADA PERCHES,
SALVADOR GREGORIO JARAMILLO,
CHRISTINA MARIE JARAMILLO, ROSEMARY
NIETO, and KIMBERLY ANN JARAMILLO,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Arnold Padilla
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Douglas G. Schneebeck
Brian K. Nichols
Albuquerque, NM

for Appellees Westland Development Co., Inc.,
Westland DevCo, LLC, and Mellon Investor
Services, Inc.

Civerolo, Gralow, Hill & Curtis
M. Clea Gutterson
Albuquerque, NM

Greenberg Traurig, LLP
Paul R. Bessette
Jesse Z. Weiss

2

Austin, TX

for Appellee Page

Claudine R. Sattler
Albuquerque, NM

for Appellee Aranda

Gilpin & Keefe, P.C.
Donald C. Gilpin
Albuquerque, NM

for Appellees Jaramillo/Perches

**OPINION**

**FRY, Chief Judge.**

**{1}** In this opinion we resolve three separate appeals brought by Plaintiff Tryna Saavedra Wilde, the personal representative of the estate of Rosalia Saavedra, all stemming from the dismissal of Saavedra's lawsuit alleging fraud, conversion, and breach of fiduciary duty regarding the transfer and sale of certificates representing shares of stock in Westland Development Co. (Westland). Of the parties relevant to this appeal, Saavedra sued Westland, Westland DevCo (DevCo), and Mellon Investor Services (collectively, the Entity Defendants), the heirs of Gregorio Jaramillo (the Jaramillo Defendants), Barbara Page, and Raymond Aranda for alleged wrongdoing surrounding the transfer and sale of the stock certificates. The district court granted summary judgment to all Defendants, and Plaintiff appeals. For the following reasons, we affirm the district court's dismissal of Saavedra's claims.

## I. BACKGROUND

**{2}** Westland is an entity formed to manage the property interests of the heirs of the Atrisco land grant. *See Lett v. Westland Dev. Co.*, 112 N.M. 327, 327-28, 815 P.2d 623, 623-24 (1991) (reviewing the history of the Atrisco land grant and the formation of Westland). The heirs of the Atrisco land grant were each issued shares of Westland stock based on their ownership interests in the land grant. *Id.* at 328, 815 P.2d at 624. These shares were represented by stock certificates that were given to each shareholder.

**Griego Jaramillo and Antonio Aranda Certificates Transferred to Nino Barboa**

**{3}** Sometime between 1974 and 1976, three registered shareholders transferred a total of four stock certificates to Saturnino (Nino) Barboa. Gregorio Jaramillo transferred two

3

certificates (the Jaramillo certificates) and Antonio Aranda transferred one certificate to Nino. The fourth certificate is irrelevant to this appeal. The certificates were signed over to Nino, and Nino attempted to register the certificates in his name. However, due to a problem with Nino's ability to have the certificates registered in his name because he was not an original heir of the Atrisco land grant, Aranda and Jaramillo remained the registered owners of the certificates in Westland's records.

**Nino Barboa Transfers Jaramillo and Aranda Certificates to Sonny Barboa, and Sonny Transfers to Saavedra**

**{4}** In 1984, prior to his death, Nino transferred all four of the certificates to his son, Sonny. Nino did not endorse the certificates to Sonny, and Sonny never attempted to register the shares. Instead, in 1989, Sonny gave all of the original certificates to the original plaintiff in this case, Rosalia Saavedra, as a gift. The certificates were not signed by Sonny or otherwise endorsed to Saavedra. In 1990 Sonny accompanied Saavedra to Westland's office to attempt to have the certificates registered in Saavedra's name. According to Sonny, Westland refused to register the certificates, citing a problem with the transfer from Sonny to Saavedra. According to Saavedra's first amended complaint, Barbara Page, the chief executive officer of Westland, informed Saavedra that her ownership of the certificates would be noted in Westland's records and that Saavedra should "hold on to" the certificates.

**Gregorio Jaramillo and Raymond Aranda Obtain Replacement Certificates**

**{5}** In 1987, prior to the time that Sonny gave the certificates to Saavedra, Jaramillo, who was still the registered owner of the Jaramillo certificates, obtained replacement certificates for the shares he had sold to Nino. Thus, in 1990, when Saavedra and Sonny unsuccessfully attempted to have the Aranda and Jaramillo certificates registered in Saavedra's name, while Saavedra possessed the original certificates, Jaramillo possessed replacement certificates for the same shares represented by the original Jaramillo certificates. As a result of the fact that Antonio Aranda and Gregorio Jaramillo were still the registered owners of the certificates, dividends from their stock continued to be paid to their heirs. The dividends paid to these heirs between 1992 and 1997 ranged from $.50 to $1.35 per share. Saavedra never received any dividends from the certificates at issue in this case.

**{6}** In 1998, Raymond Aranda, a descendant of Antonio Aranda, contacted Saavedra and inquired about buying Antonio's certificate from her. Despite his inquiry, Raymond Aranda never purchased the certificate from Saavedra. Instead, in 2004, Raymond Aranda filed an affidavit with Westland stating that he was the successor of the estate of Antonio Aranda, whereupon Westland issued a new certificate in Raymond Aranda's name. Although Plaintiff alleged that Raymond Aranda had represented to Westland that he had lost his father's original certificate, Plaintiff was unable to produce evidence supporting this allegation.

**Saavedra Again Attempts to Register Her Certificates and Then Files Suit**

**{7}** In 2006 Suncal Companies acquired Westland. As a result of this acquisition, the owners of Westland stock certificates were able to sell their Westland shares for approximately $315 per share. In 2007, after learning about the sudden increase in the value of the shares, Saavedra again attempted to register her certificates, but again, Westland informed her that she could not register them.

**{8}** Sometime after this attempt to register the certificates, Saavedra discovered that Westland had issued replacement certificates to Aranda and Jaramillo. As a result of this discovery, Saavedra filed suit against the Entity Defendants and Barbara Page. In addition, Saavedra filed suit against Raymond Aranda and his two daughters and the Jaramillo Defendants, who are heirs of Gregorio Jaramillo who had received an interest in the certificates for which Gregorio had obtained replacements.

**{9}** Saavedra sought damages for breach of fiduciary duty, conversion, and fraud, all stemming from Westland's issuance of the replacement certificates. Specifically, Saavedra alleged that Page, as a Westland director, had a fiduciary duty "not to allow or facilitate transfer of ownership" of the certificates and that this duty had been breached when the replacement certificates were issued. Saavedra alleged that Jaramillo's and Aranda's acts of obtaining replacement certificates constituted fraud and "improper conversion" of her property. Finally, Saavedra alleged that Page had committed fraud by representing that Saavedra's ownership of the certificates would be noted in Westland's records. A short time after filing her complaint, Saavedra died, and her estate was substituted as Plaintiff. In this opinion, we refer to Saavedra by name, while we refer to her estate, which is the party to this appeal, as "Plaintiff."

**Motions for Summary Judgment**

**{10}** Following the filing of Saavedra's complaint, Defendants each filed separate motions for summary judgment. All Defendants argued that Saavedra's cause of action accrued when she was first informed in 1990 that Westland would not register her certificates and that her claims were therefore time-barred by the applicable statute of limitations or under the doctrine of laches. All Defendants except Aranda also argued that Saavedra's claims were barred because Westland had acted in accordance with its obligations to issue new stock certificates under Article 8 of New Mexico's Uniform Commercial Code.

**{11}** The district court granted all Defendants' motions for summary judgment, concluding that Saavedra's claims were time-barred and that there had been no tolling of the statute of limitations. Plaintiff separately appealed each of the court's summary judgment orders. Because all three of the appeals stem from the same complaint, we address them in one opinion.

## II.    DISCUSSION

### A.    Standard of Review

5

**{12}** We review an order granting summary judgment de novo. *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551 (internal quotation marks and citation omitted). "We view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party." *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 12, 135 N.M. 423, 89 P.3d 672 (filed 2003). Summary judgment is not appropriate "when the record discloses the existence of a genuine controversy concerning a material issue of fact or when the [district] court granted summary judgment based upon an error of law." *Id.*

## B. Outline of Opinion

**{13}** Central to all three of Plaintiff's appeals is the question of whether the statute of limitations barred Saavedra's claims. Therefore, we first address this issue and conclude that the claims against the Jaramillo Defendants, as well as the claims against the Entity Defendants and Page that arise out of the Jaramillo certificates, began to run in 1990. On the other hand, we conclude that the statute of limitations applicable to Saavedra's claims arising out of the Aranda certificate began to run in 2004 and thus, that the limitations period had not expired on the claims arising out of the Aranda certificate. We then address Plaintiff's argument that misrepresentations tolled the statute of limitations applicable to the claims related to the Jaramillo certificates and conclude that no tolling occurred. Thus, the statute of limitations barred Saavedra's claims arising from the Jaramillo certificates.

**{14}** This leaves us with the claims against Aranda and the claims against the Entity Defendants and Page that arise out of the Aranda certificate. We hold that these claims are not barred under the doctrine of laches.

**{15}** We then consider whether Plaintiff failed to demonstrate an issue of material fact related to Saavedra's fraud claim against Aranda and conclude that she did so fail. Thus, summary judgment in favor of Aranda, the Entity Defendants, and Page related to Saavedra's fraud claims was proper. We further conclude that relevant provisions of the Uniform Commercial Code warranted summary judgment against Plaintiff on Saavedra's claim against Aranda for conversion and on all of Saavedra's remaining claims against the Entity Defendants and Page.

## C. Applicability of Statute of Limitations

**{16}** As a preliminary matter, Plaintiff argues that the district court improperly permitted the Jaramillo Defendants to incorporate by reference the statute of limitations arguments made by Page in her motion for summary judgment. Thus, Plaintiff contends that the Jaramillo Defendants did not properly raise the issue and that we should therefore reverse summary judgment in their favor. Plaintiff concedes, however, that she "did not explicitly object below to this practice, believing it necessary in the exercise of diligence and caution to respond to all of [the Jaramillo [Defendants'] allegations." Because Plaintiff admittedly failed to preserve her argument, we decline to review the issue on appeal. *Sandoval v. Baker*

6

*Hughes Oilfield Operations, Inc.*, 2009-NMCA-095 , ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to preserve an issue for appeal, [a party] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.").

**{17}** The district court concluded that the statute of limitations began to run on all of Saavedra's claims when Westland informed Saavedra in 1990 that she could not register the shares. Plaintiff contends that the statute of limitations did not begin to run until Saavedra attempted to register and redeem her certificates in 2007 and was informed that Westland had issued replacement certificates. In this case, the relevant facts are generally not in dispute. As a result, "the standard of review is whether the court correctly applied the law to the undisputed facts." *Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 13, 147 N.M. 625, 227 P.3d 115. This presents a question of law that we review de novo. *Id.*

**{18}** The statute of limitations for causes of action sounding in fraud or conversion is four years from the date that the cause of action accrues. NMSA 1978, § 37-1-4 (1880). Because New Mexico follows the "discovery rule," the cause of action does not accrue until the plaintiff discovers the fraud or conversion. NMSA 1978, § 37-1-7 (1880). For purposes of determining when the cause of action accrues, discovery is defined as the "discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of [the] fraud" or other injury. *Ambassador E. Apartments Investors v. Ambassador E. Invs.*, 106 N.M. 534, 536, 746 P.2d 163, 165 (Ct. App. 1987) (internal quotation marks and citation omitted); *see McNeill v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 14, 141 N.M. 212, 153 P.3d 46 (noting that under the discovery rule, "a cause of action arises not necessarily at the time of injury, but rather at the time a plaintiff knows or should have known of the claims"), *aff'd* 2008-NMSC-022, 143 N.M. 740, 182 P.3d 121. In the absence of actual knowledge of fraud, "a reasonable-person standard will be applied as to whether [a plaintiff] should have known of the fraud." *Ambassador E. Apartments Investors*, 106 N.M. at 536, 746 P.2d at 165.

**{19}** Saavedra alleged that when she attempted to register the certificates in 1990, Westland "gave no reason but declined to make the transfer." Sonny, who gave the certificates to Saavedra and accompanied her to Westland's office when she attempted to register the certificates, testified in his deposition that he was not sure what reason Westland gave for not registering the certificates, but that he thought it might have been because the certificates were still in Nino's name. Saavedra did not inquire into the reason that she was unable to register her certificates and took no action to compel Westland to register the certificates. Whether the statute of limitations began to run in 1990 thus depends on whether a reasonable person would have discovered the alleged fraud and conversion as a result of Westland's refusal to register the certificates.

**{20}** We discuss the commencement of the statute of limitations separately with respect to the Jaramillo certificates and the Aranda certificate because different circumstances obtain with respect to each category. In addition, some of Saavedra's claims against the Entity Defendants and Page are based on those Defendants' alleged conduct with respect to both the Jaramillo certificates and the Aranda certificate.

7

## 1.     The Jaramillo Certificates

**{21}**     Saavedra claimed that Jaramillo fraudulently obtained replacement certificates and that the Entity Defendants and Page fraudulently issued Jaramillo the replacement certificates despite their knowledge of Saavedra's preexisting ownership of the original certificates. Plaintiff contends that the statute of limitations for Saavedra's claims stemming from the issuance of these certificates began to run when Saavedra discovered in 2007 that the certificates had been issued.   However, when Saavedra attempted to register her certificates in 1990, Jaramillo had already obtained replacement certificates from Westland. Consequently, had Saavedra undertaken a reasonable investigation into the reason she was unable to register her certificates, she would have discovered that Jaramillo had obtained replacement certificates in 1987.   Saavedra's inability to register the certificates therefore constituted knowledge of facts that would have led a reasonable person to undertake further investigation into the reasons underlying the impediment to registration.   Such an investigation would have uncovered the fraud allegedly perpetrated by Jaramillo, the Entity Defendants, and Page.

**{22}**     The statute of limitations for Saavedra's fraud and conversion claims relating to the Jaramillo certificates therefore began to run in 1990, which was sixteen years prior to the date Saavedra filed her claims related to the Jaramillo certificates.   The district court therefore properly concluded that Saavedra's claims against the Jaramillo Defendants were barred by the statute of limitations.   Similarly, Saavedra's claims against the Entity Defendants and Page that stem from the Jaramillo certificates also began to accrue in 1990 and are also time barred.  We therefore affirm summary judgment in favor of the Jaramillo Defendants, the Entity Defendants, and Page for Plaintiff's claims related to the Jaramillo certificates.

## 2.     The Aranda Certificate

**{23}**     Applying the same analysis to Saavedra's claims related to the Aranda certificate, however, we reach a different conclusion.   Unlike Jaramillo, who obtained replacement certificates in 1987, Aranda obtained his replacement certificate in 2004.   Thus, when Saavedra discovered in 1990 that she was unable to register her certificates, no amount of due diligence would have uncovered the alleged fraud and conversion that occurred fourteen years later in 2004.   Because the earliest that Saavedra could have become aware of Aranda's alleged misconduct in requesting the replacement certificate (and the alleged misconduct of the Entity Defendants and Page in issuing the replacement certificate) was 2004, we disagree with the district court's conclusion that the statute of limitations for Saavedra's cause of action against Aranda began to run in 1990. Similarly, Saavedra's cause of action against the Entity Defendants and Page related to the Aranda certificate did not begin to accrue until, at the earliest, the time of the alleged wrongdoing—2004.  Because Saavedra's complaint was filed in 2007, she was well within the four-year statute of limitations with respect to her claims stemming from the Aranda certificate.

## D.     Saavedra's Tolling Claim as Applied to the Claims Arising Out of the Jaramillo Certificates

**{24}** Because we have concluded that the statute of limitations on Saavedra's claims arising out of the Jaramillo certificates began to run in 1990, we now turn to Plaintiff's argument that the statute of limitations was tolled. Plaintiff maintains that Page made misrepresentations that led Saavedra to believe that she should not be concerned about her ownership of the certificates. The district court concluded that there was no admissible evidence supporting Plaintiff's assertion that Page or anyone else at Westland made misrepresentations to Saavedra regarding her ownership of the certificates. On appeal, Plaintiff argues that the court erroneously failed to consider the sworn statements Saavedra made in her complaint to be admissible evidence of the misrepresentations.

**{25}** In the district court, Plaintiff contended that because Saavedra died during the course of the litigation, the court should consider the verified allegations Saavedra made in her complaint as sworn statements supporting Plaintiff's opposition to the Entity Defendants' motion for summary judgment. Plaintiff argued that Saavedra's statements in her complaint, while hearsay, were admissible under Rule 11-807 NMRA, the residual hearsay exception that allows the admission of statements "not specifically covered by Rule 11-803 NMRA or Rule 11-804 NMRA but having equivalent circumstantial guarantees of trustworthiness." Plaintiff made these arguments in response to the district court's order directing supplemental briefing and specifically requesting Plaintiff to demonstrate the circumstances of Saavedra's sworn statements that would support the applicability of the residual exception. After reviewing the parties' briefing on the issue, the court determined that Plaintiff had failed to present any evidence of the circumstances surrounding Saavedra's statements that would tend to guarantee their trustworthiness such that Rule 11-807 would apply, and it concluded that the statements were therefore inadmissible hearsay. In the absence of the statements in Saavedra's complaint, there was no admissible evidence that Page made any misrepresentations to Saavedra that could have tolled the statute of limitations, and the court granted summary judgment in favor of the Entity Defendants and Page. Because the question of whether the statute of limitations had been tolled also necessarily affected the district court's conclusion that the statute of limitations barred Saavedra's claims against the Jaramillo Defendants, resolution of this question is therefore essential to all claims arising out of the Jaramillo certificates.

## 1. Residual Hearsay Exception Not Applicable

**{26}** Plaintiff contends that she established genuine issues of material fact related to Page's alleged misrepresentations, which served to toll the statute of limitations. She argues that Saavedra's verified statements in the complaint constituted evidence of these misrepresentations. It appears that the statements on which Plaintiff relies were statements in Saavedra's complaint alleging that Page told Saavedra that "her current ownership of the [c]ertificates would be noted in Westland records" and that when she again attempted to transfer the certificates to her name, Saavedra "was repeatedly rebuffed by . . . Page." The district court concluded that Saavedra's statements in her complaint were hearsay, and Plaintiff does not argue that they were not hearsay. Rather, Plaintiff maintains that the statements were subject to the hearsay exception in Rule 11-807.

9

**{27}** As a preliminary matter, Plaintiff contends that Saavedra's verified statements "were no different from any affidavit of any declarant not present in court and all inferences should have been resolved in favor of admitting her sworn statements." In support of this argument, Plaintiff cites *Seal v. Carlsbad Independent School District*, 116 N.M. 101, 860 P.2d 743 (1993), for the propositions that "the form of summary judgment evidence itself does not have to meet the requirements of admissibility for trial evidence, but the substance of the evidence must be of a type that can be admitted at trial" and that "a deposition that may not be admissible at trial for one reason or another is still a sworn statement that may contain sufficient specific facts admissible into evidence to raise a genuine issue of material fact if it is based on personal knowledge." *Id.* at 105, 860 P.2d at 747 (emphasis omitted). Plaintiff contends that because Saavedra's sworn statements were based on personal knowledge, the court should have considered the allegations in the complaint when determining whether there were any issues of fact regarding Page's alleged misrepresentations to Saavedra.

**{28}** Plaintiff ignores the distinction made in *Seal* between the form and the substance of summary judgment evidence. *Seal* makes clear that while a court must consider evidence even if the form of the evidence, such as a deposition, would be inadmissible at trial, it cannot consider evidence if the *substance* of the evidence is inadmissible at trial. The Court explained that hearsay, for example, "is not generally admissible at trial, so affidavits or depositions containing hearsay are not sufficient evidence of a fact." *Id.*

**{29}** Here, the district court concluded that Saavedra's complaint was hearsay and that the statements in it were therefore inadmissible for purposes of summary judgment. This conclusion was not based on the *form* of the evidence, but instead on the *substance* of the evidence Plaintiff sought to use. The substance of the evidence Plaintiff sought to use was Saavedra's verified complaint itself, which the district court determined to constitute hearsay, and Plaintiff does not challenge this determination.

**{30}** Plaintiff further contends that the district court erred in concluding that Rule 11-807, the residual hearsay exception, did not apply to Saavedra's complaint itself, which set out statements by Page alleged to constitute misrepresentations. We review the exclusion of hearsay testimony for an abuse of discretion. *State v. Lopez*, 2000-NMSC-003, ¶ 10, 128 N.M. 410, 933 P.2d 727 (filed 1999). In so doing, we "presume[] that the district court is correct and that the burden is on the appellant to clearly demonstrate the district court's error." *Akins v. United Steelworkers of Am., AFL-CIO, CLC*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457, *cert. granted*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the district court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

**{31}** Rule 11-807 provides that a statement that is not covered by the hearsay exceptions in Rules 11-803 and 11-804 may be admitted under certain circumstances if it has "equivalent circumstantial guarantees of trustworthiness." The district court concluded that Plaintiff offered no evidence of the "circumstances which might tend to guarantee the trustworthiness of [Saavedra's] declarations [in the complaint]."

**{32}** We agree with the district court. The evidence Plaintiff offered on the trustworthiness of Saavedra's statements consisted of evidence tending to corroborate her statements, such as notes in the Westland file suggesting that Saavedra maintained an ownership interest in the certificates. According to our Supreme Court, this is not sufficient. In assessing indicia of trustworthiness, "[the] analysis focuses exclusively upon the circumstances surrounding the making of the out-of-court statement, disregarding other evidence that might corroborate the statement's veracity." *State v. Ross*, 122 N.M. 15, 24, 919 P.2d 1080, 1089 (1996); *see Lopez*, 2000-NMSC-003, ¶ 17 (stating, in an analysis involving the residual hearsay exception, that courts do not consider corroborating evidence). We therefore conclude that the district court did not abuse its discretion in determining that Saavedra's statements were not sufficiently trustworthy to fall within the residual exception to the hearsay rule.

### 2. The Sanchez Affidavit

**{33}** After the district court determined that it would enter summary judgment in favor of the Entity Defendants and Page, Plaintiff attempted to submit additional evidence purporting to bolster the trustworthiness of Saavedra's statements in the complaint. Plaintiff filed a motion to reconsider to which she attached the affidavit of Helen Sanchez, who was the shareholder relations director at Westland from 1989 to 1995. Sanchez attested that she had spoken to Saavedra on numerous occasions after Saavedra met with Page and that Saavedra always stated that Page had told her not to worry about the certificates. In their response to Plaintiff's motion to reconsider, the Entity Defendants argued that the court should not consider Sanchez's affidavit because (1) Plaintiff, despite knowing about Sanchez's testimony since June 2007, failed to mention Sanchez at any time prior to filing her motion for reconsideration; and (2) the affidavit did not provide any indicia of reliability such that Rule 11-807 would apply. The district court agreed with the Entity Defendants and denied Plaintiff's motion, concluding that Plaintiff failed to establish "any grounds for failing at the hearing on the matter to make any of the new or additional arguments" contained in the motion to reconsider and that Plaintiff failed "to establish proper material grounds for reconsideration of the issues raised."

**{34}** On appeal, Plaintiff argues that the district court erred in denying her motion to reconsider and in declining to consider the affidavit she attached to her motion. Plaintiff claims that Sanchez was unavailable to submit an affidavit until after the hearing on the motion for summary judgment.

**{35}** We review the denial of a motion to reconsider for abuse of discretion. *Nance v. L.J. Dolloff Assocs. Inc.*, 2006-NMCA-012, ¶ 23, 138 N.M. 851, 126 P.3d 1215 (filed 2005). In *Nance*, we upheld the district court's denial of a motion to reconsider summary judgment where the party opposing summary judgment presented evidence for the first time in a motion to reconsider even though the evidence was available at the time the party filed its response to the motion. *See id.* ¶ 24. In the present case, Plaintiff contends that because Sanchez was unavailable to sign an affidavit until after Plaintiff filed her response to the Entity Defendants' motion for summary judgment, Sanchez's affidavit was new evidence, not evidence that was available at the time of the hearing. We disagree.

11

**{36}**    Plaintiff's investigator attested that he spoke to Sanchez on June 29, 2007, and that Sanchez provided him with information regarding "her knowledge of issues related to Rosalia Saavedra and the [c]ertificates." Thus, as of June 29, 2007, nearly six months before the first summary judgment hearing on January 18, 2008, Plaintiff was aware that Sanchez had knowledge of issues related to Saavedra and the certificates. Despite this awareness, Plaintiff did not mention the potential testimony of Sanchez at any time during the summary judgment proceedings until she filed her motion to reconsider. Plaintiff contends that she was unable to submit an affidavit from Sanchez earlier because Sanchez became ill shortly after she met with Plaintiff's investigator and did not recover until after the motion for summary judgment had been granted. However, Plaintiff fails to explain why she did not comply with Rule 1-056(F) NMRA, which provides a method by which a party can delay summary judgment in order to obtain an affidavit from an unavailable witness.

**{37}**    In her reply brief, Plaintiff cites *Pena v. Westland Development Co.*, 107 N.M. 560, 564, 761 P.2d 438, 442 (Ct. App. 1988), and argues that she has met all six of the elements required for granting a new trial based on newly discovered evidence. Plaintiff does not explain why or how the rules applicable to motions for a new trial based on newly discovered evidence are relevant to a motion to reconsider. Plaintiff further fails to account for the fact that she was aware of Sanchez's testimony at the time she filed her response to the Entity Defendants' motion for summary judgment.

**{38}**    Under these circumstances, we conclude that the district court did not abuse its discretion in denying Plaintiff's motion for reconsideration and in refusing to consider the affidavit of Sanchez. We therefore reject Plaintiff's argument that the Sanchez affidavit guarantees the trustworthiness of the statements in the complaint.

**{39}**    Because we affirm the district court's ruling that there was no admissible evidence that Page made any misrepresentations to Saavedra, we do not address Plaintiff's arguments that Page's statements constituted fraudulent misrepresentation.

**E.    Laches and the Aranda Certificate**

**{40}**    Because Saavedra's claims related to the Aranda certificate are not barred by the statute of limitations, we now address Aranda's argument that the doctrine of laches also serves as a bar to Saavedra's claims against him.

**{41}**    The district court concluded that the doctrine of laches barred Saavedra's claims against Aranda. Specifically, the court noted that "[Saavedra] was aware of a number of significant problems with respect to the stock as early as 1989, and never did anything about it, and there is prejudice."

**{42}**    Laches is an equitable defense that will bar a cause of action not barred by a statute of limitations when four elements are met. *Martinez v. Martinez*, 2004-NMCA-007, ¶ 21, 135 N.M. 11, 83 P.3d 298 (filed 2003). The required elements are:

12

(1)    Conduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy;

(2)    delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;

(3)    lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which [she] bases [her] suit; and

(4)    injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.

*Id.* (internal quotation marks and citation omitted).

**{43}**    Aranda contends that there was no disputed issue of fact that all four elements of laches have been met. As to the first element, Aranda argues that "the pivotal event" was Saavedra's inability to register the certificates in 1990 and that "[f]rom that time forward [Saavedra] knew that there was some flaw in the handing along of the certificates" and that "action by the original heirs, if still living, was possible." Aranda argues that the second element was met by Saavedra's failure to take any action regarding her ownership of the certificates between the date she first knew there might be a problem and the date that she filed suit. With respect to the third element, Aranda contends that "the passage of time from 1974 when Certificate 198 was placed in Antonio Aranda's name until 2004 when it was placed in . . . Aranda's name provide[d] Aranda with no knowledge or notice that a claim would be made." Finally, Aranda contends that he is prejudiced by the fact that the majority of the parties involved in the original transfer have died and are unable to testify.

**{44}**    We disagree with Aranda that there is no issue of fact regarding the elements of laches. The first element of the tort requires a showing that there was some conduct on the part of Aranda that gave rise to the situation about which Plaintiff complains. *Garcia*, 111 N.M. at 588, 808 P.2d at 38. None of the conduct in the early 1990s that Aranda cites, however, constitutes Aranda's conduct giving rise to Saavedra's complaint. Aranda did nothing until 2004, when he obtained the replacement certificate. In addition, while Saavedra was put on notice in 1990 that there were some problems with her ability to register the certificate, she was not put on notice that Aranda was going to make an adverse claim regarding the ownership of the certificate sometime in the future.

**{45}**    Regarding the second element, delay, Aranda has not argued that Saavedra engaged in any unreasonable delay between the time she first became aware that Aranda had obtained the certificate and the time that the suit was filed. The short delay between Saavedra's discovery that Aranda had obtained the certificate in 2007 and the filing of her suit later that year is not the type of delay that the doctrine of laches is intended to remedy. Even assuming that Saavedra should have known in 2004 that Aranda had obtained a replacement

13

certificate, we cannot say that the three-year delay between Aranda's conduct and the filing of the suit was unreasonable as a matter of law.

**{46}** With respect to the third element, Aranda argues that because Saavedra took no action to resolve the registration issues with the certificate between 1974 and 2004, he had no knowledge or notice that a claim would be made. The record before us on appeal, however, belies Aranda's argument. According to Plaintiff, Aranda contacted Saavedra directly in 1998 or 1999 to ask about buying the certificate. Westland's notes from that time indicate that Aranda was seeking to buy the certificate, and Aranda concedes that he was inquiring about purchasing the certificate at that time. By seeking to purchase the certificate from Saavedra, Aranda demonstrated knowledge that Saavedra possessed the certificates and claimed ownership of them. Thus, contrary to his argument that he had no knowledge that a claim would be made, there is evidence that Aranda was on notice that if he attempted to obtain the certificate without Saavedra's consent, Saavedra might assert her ownership of the certificate.

**{47}** Finally, Aranda contends that he was prejudiced by the fact that a number of material witnesses died between the time that Saavedra first became aware of the ownership issues and the time that she filed her suit. Specifically, he points to the deaths of Antonio Aranda, Nino, and Saavedra herself. Nino died in 1986, approximately three years before Sonny gave the certificates to Saavedra. Antonio Aranda died in 1989, the same year that Saavedra received the certificates. Thus, while Aranda argues that Saavedra's delay resulted in prejudice because both Antonio and Nino had died, the record reflects that both of these individuals died *before* Saavedra ever obtained possession of the certificates. Thus, it is illogical to fault Saavedra for any prejudice caused by the unavailability of those individuals.

**{48}** Because Aranda failed to demonstrate the existence of any of the four necessary elements for the doctrine of laches to apply, we conclude that the district court erred in granting summary judgment on the basis of the doctrine with respect to Plaintiff's claims related to the Aranda certificate.

### F.      Fraud Claims Based on the Aranda Certificate

**{49}** Having rejected the district court's conclusion that the claims based on the Aranda certificate were time-barred, we now turn to the court's conclusion that Plaintiff failed to demonstrate a genuine issue of any material fact supporting her fraud claim based on that certificate. Saavedra's fraud claim against Aranda was based on the alleged fact that Aranda filed a lost-certificate affidavit and obtained a replacement certificate when he knew that Saavedra had possession of the allegedly lost certificate. Thus, Saavedra's claims stemmed from the representations that Aranda allegedly made to Westland in order to obtain a replacement certificate. In granting summary judgment in favor of Aranda, the district court explained that there was no evidence "concerning a misrepresentation from Aranda or to [Saavedra], whether directly or from an agent" and that "without evidence of a misrepresentation, there logically could[ not] be any evidence of reliance." On appeal, Plaintiff argues that the court's conclusion was wrong.

14

**{50}** "An actionable fraud is a misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive and to induce the other party to act upon it with the other party relying upon it to his injury or detriment." *Unser v. Unser*, 86 N.M. 648, 653-54, 526 P.2d 790, 795-96 (1974). In this case, Plaintiff claimed that Aranda misrepresented to Westland that he had lost the original certificate belonging to his father, despite his knowledge that Saavedra had possession of the original certificate. She claimed that the Entity Defendants and Page relied on Aranda's misrepresentation in issuing the replacement certificate and further that they committed fraud in their own right by issuing the replacement while knowing that Saavedra had the original.

**{51}** The problem with Plaintiff's claims is that she failed to produce evidence of Aranda's alleged misrepresentation. The only evidence in the record regarding the replacement certificate established that Aranda filed an affidavit with Westland stating that he was the successor to the estate of Antonio Aranda and that Westland issued a replacement certificate on the basis of that affidavit. There is nothing suggesting that any of the statements in this form affidavit were misrepresentations because Aranda was indeed the successor to his father's estate. Plaintiff therefore failed to present evidence of any misrepresentation on which to base her fraud claims.

**{52}** Plaintiff further argues that the district court should have stayed the summary judgment proceedings to give Plaintiff an opportunity to obtain a copy of the documents that Aranda submitted to Westland to obtain the replacement certificate. Plaintiff filed a Rule 1-056(F) affidavit seeking a stay in order to conduct additional discovery and argued that the case was complex, involved voluminous documentation and that while "some discovery . . . ha[d] been conducted, much of the time spent in th[e] case ha[d] been monopolized by numerous pleadings and hearings related to prior motions for summary judgment." The affidavit stated that "[e]ssential and extensive discovery of testimony and of documents in the possession of . . . Defendants was interrupted" by the summary judgment proceedings "and remain[] incomplete."

**{53}** At the hearing on the matter, the district court first indicated that Plaintiff's "Rule [1-0]56(F) affidavit is deficient" because Plaintiff made only a general statement that she needed more discovery and failed to indicate with particularity the specific evidence she sought to obtain through further discovery. Immediately after making that statement, however, the district court indicated that during the argument, Plaintiff's counsel had "cleared up what [he was] looking for," which was apparently the lost-certificate affidavit allegedly submitted to Westland by Aranda. The district court noted that the Rule 1-056(F) motion "ha[d] been pending for longer than three months which, under the circumstances, ought to be ample time to present to the [c]ourt any and all missing evidence."

**{54}** On appeal, Plaintiff argues only that "she satisfied the Rule [1-0]56 requirements for obtaining a stay of proceedings" and that a Rule 1-056(F) motion does not require the particular details of the evidence sought to be obtained during discovery. Thus, Plaintiff contends that the district court erred in concluding that the motion and accompanying affidavit were deficient. However, as evidenced by the statements of the district court, the court did not deny Plaintiff's motion due to its lack of particularity. Rather, the court

indicated that Plaintiff's counsel had clarified what he wanted to obtain through further discovery but that Plaintiff had had ample time to conduct the discovery. Plaintiff does not challenge this conclusion. Because Plaintiff challenges only the district court's conclusion that her affidavit was deficient, and because the court did not base its denial of Plaintiff's motion on the deficiency of the affidavit, we conclude there was no error. Thus, we hold that summary judgment against Plaintiff was proper on her claims based on Aranda's alleged fraud, whether they were asserted against Aranda or against the Entity Defendants and Page.

### G.      Conversion Claims Against Aranda

**{55}**     The district court concluded that there was an issue of material fact with respect to Saavedra's conversion claim against Aranda, but that the claim nonetheless failed because it was time-barred by either the statute of limitations or the doctrine of laches. Because we conclude that Saavedra's claims against Aranda are not barred by the statute of limitations or laches, we address Aranda's argument that the district court erroneously concluded that there were issues of material fact with respect to the conversion claim. Aranda argues that Saavedra's conversion claim is governed by the Uniform Commercial Code (UCC) and that she failed to state a cause of action upon which relief can be granted. We agree.

**{56}**     "Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Sec. Pac. Fin. Servs. v. Signfilled Corp.*, 1998-NMCA-046, ¶ 15, 125 N.M. 38, 956 P.2d 837. An essential element of a conversion claim is that the defendant exercise dominion or control over the property of another. *See id.*

**{57}**     Saavedra's conversion claim against Aranda alleged that Aranda knew that Saavedra possessed the certificate and, despite that knowledge, he obtained and redeemed a replacement certificate from Westland. Plaintiff contends that the act of obtaining a replacement certificate constituted conversion. We disagree. Under the common law, the issuance of a replacement certificate automatically revoked the original certificate, rendering the original certificate valueless. NMSA 1978, § 55-8-405 (1996), cmt. 2. Under the UCC, however, the issuance of a replacement certificate under the UCC has no effect on the value of the original certificate. *See id.* Section 55-8-405 makes clear that "[i]f, after the issue of a new security certificate, a protected purchaser of the original certificate presents it for registration of transfer, the issuer," which in this case is Westland, is required to "register the transfer unless an overissue would result." Section 55-8-405(b). In the event that a protected purchaser, such as (hypothetically) Saavedra, registers the original certificate, the *issuer* "may recover the new certificate from a person to whom it was issued or any person taking under that person, except a protected purchaser." *Id.* It is only "[w]here both the original and the new certificate have reached protected purchasers" *and* "an overissue would result" that the "purchaser of the original certificate is relegated to an action for damages." *Id.* at cmt. 2. By contrast, if an overissue would not result, the issuer must honor both the original and the new replacement certificates. *Id.* Thus, Saavedra's remedy under the UCC in the event that Westland refused to honor her original certificate was a cause of action

against Westland to compel registration of the original certificate, not a conversion claim against the person who obtained the replacement certificate.

**{58}** Thus, contrary to Plaintiff's contention that Aranda's acquiring a replacement certificate constituted an unlawful conversion of Saavedra's property, Aranda's conduct and the subsequent issuance of the replacement certificate actually had no effect on the value of the original certificate that Saavedra possessed. Under the UCC, Saavedra could have sought to compel Westland to register and redeem her certificate and, therefore, the certificate retained the full value it had prior to Aranda's obtaining a replacement. *See id.* Because Aranda's conduct did not constitute the unlawful exercise of dominion and control over Saavedra's original certificate, we conclude that Plaintiff failed to demonstrate the existence of facts necessary to prevail on her conversion claim. *See Sec. Pac. Fin. Servs.*, 1998-NMCA-046, ¶ 15. We therefore affirm summary judgment in favor of Aranda with respect to the conversion claim.

## H.     The Entity Defendants and Page

**{59}** As explained above, the statute of limitations with respect to Saavedra's claims against the Entity Defendants and Page related to the issuance of Jaramillo's replacement certificates began to run in 1990. However, the statute of limitations for Saavedra's claims against the Entity Defendants and Page related to the Aranda certificate did not begin to run until, at the earliest, 2004. Thus, summary judgment in favor of these Defendants with respect to the Aranda certificate was erroneous to the extent it was based on the statute of limitations. However, the district court also considered the argument that summary judgment was appropriate due to the Entity Defendants' and Page's compliance with their obligations under the UCC. Under our right-for-any-reason doctrine, we can affirm the district court on this alternative basis so long as it would not be unfair to Plaintiff. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (explaining that an appellate court may affirm a district court's ruling on a ground that was not relied on below if reliance on the new ground would not be unfair to the appellant). Because the parties argued the UCC issue below and on appeal, it would not be unfair to affirm the district court on the basis of the Entity Defendants' and Page's compliance with the UCC, and we therefore address their argument.

**{60}** The specific causes of action that Saavedra asserted against the Entity Defendants and Page are vague. Saavedra's first amended complaint specifically alleged breach of fiduciary duty against these Defendants, but the claims for fraud and conversion appeared to be directed against the Jaramillo Defendants and Aranda. In her brief-in-chief, however, Plaintiff clarifies that "[a]t its roots, [Plaintiff's] case against the [Entity Defendants and Page] is for fraud and conversion, arising from the fact that [the Entity Defendants] and Page allowed and facilitated transfers of the shares belonging to Rosalia Saavedra to third parties." Plaintiff goes on to explain that "[t]he fraud did not occur as a consequence of failure to register stocks in [Plaintiff's] name, but arose in connection with the subsequent improper registration by [the Entity Defendants] and Page of the stocks in the names of third parties." Saavedra's allegations regarding breach of fiduciary duty also stem from the registration of the shares. Thus, we construe Saavedra's cause of action against the Entity Defendants and

17

Page to be solely based on the propriety of their issuance of the replacement certificates, which Plaintiff contends divested Saavedra of her ownership interest in the original certificates. Because Saavedra's claims arising out of the Jaramillo certificates are barred by the statute of limitations, the only remaining claims against these Defendants are those arising out of the Aranda certificate. The Entity Defendants and Page argue that they acted in accordance with their obligations under the UCC when they issued the replacement certificate and that summary judgment in their favor was therefore proper.

## 1.      The UCC Required Issuance of Replacement Certificates

{61}     Article 8 of the UCC imposes specific obligations on a stock issuer requiring the issuance of replacement stock certificates when certain conditions have been met. Section 55-8-405. Section 55-8-405(a)(1) provides that "[i]f an owner of a certificated security . . . claims that the certificate has been lost, destroyed or wrongfully taken, the issuer shall issue a new certificate if," among other things, the owner "so requests before the issuer has notice that the certificate has been acquired by a protected purchaser." The stock issuer's obligation to issue a replacement certificate to the registered owner stems from the requirement that the issuer "treat the registered owner as the person exclusively entitled to vote, receive notifications and otherwise exercise all the rights and powers of an owner" unless the certificate has been presented for registration of transfer pursuant to NMSA 1978, Section 55-8-401 (1996). NMSA 1978, § 55-8-207 (1996).

{62}     Plaintiff contends that the Entity Defendants and Page failed to comply with Article 8 because they had actual notice of Saavedra's adverse claim, which precluded them from issuing the replacement certificates. In support of this argument, Plaintiff cites NMSA 1978, Section 55-8-105(a) (1996), which provides that

> (a)      A person has notice of an adverse claim if:
>
> (1)      the person knows of the adverse claim;
>
> (2)      the person is aware of facts sufficient to indicate that there is a significant probability that the adverse claim exists and deliberately avoids information that would establish the existence of the adverse claim; or
>
> (3)      the person has a duty, imposed by statute or regulation, to investigate whether an adverse claim exists and the investigation so required would establish the existence of the adverse claim.

Plaintiff contends that because the Entity Defendants and Page were aware that Saavedra had tried to register the certificates in 1990 and because the Entity Defendants' and Page's records reflected that Saavedra possessed the original certificates, they were aware that Saavedra had an adverse claim that would preclude the issuance of the replacement certificates.

18

**{63}** Plaintiff fails to recognize that the notice provision in Section 55-8-105 applies only to those sections of the UCC requiring a *purchaser* to take the certificates without notice of an adverse claim. *See* § 55-8-105, cmt. 1. Section 55-8-405, which governs the obligations of the stock issuer, precludes the issuance of a replacement certificate only if the issuer has notice that the original certificate has been acquired by a protected purchaser, not where the issuer has notice of an adverse claim. *See also* NMSA 1978, § 55-8-404 (1996), cmt. 3 (explaining that "the fact that a third person notifies the issuer of a claim does not preclude the issuer from treating the registered owner as the person entitled to the security"). Thus, the Entity Defendants and Page were required to refrain from issuing the replacement certificates only if they had notice that a protected purchaser had acquired the original certificates.

**{64}** A "protected purchaser" is defined as "a purchaser of a certificated . . . security" who "(1) gives value[,] (2) does not have notice of any adverse claim to the security[,] and (3) obtains control of the certificated . . . security." NMSA 1978, § 55-8-303(a)(1)-(3) (1996). The requirements for control of a certificate in registered form are: "(1) delivery as defined in [NMSA 1978,] Section [55-]8-301(b) [(1996)], plus (2) either an effective [e]ndorsement or registration of transfer by the issuer." Section 55-8-303, cmt. 3. Plaintiff does not argue that Saavedra was a protected purchaser or that the Entity Defendants or Page had any notice that the certificates had been acquired by a protected purchaser, nor does she contend that Saavedra gave value for the certificates or that there was an effective endorsement on the certificates such that she could be deemed to have control of the certificates. Instead, Plaintiff contends only that Saavedra possessed the physical copy of the original certificates that had been endorsed to Nino Barboa.

**{65}** Section 55-8-405 makes clear that an issuer is obligated to issue a replacement certificate upon request by a registered owner unless the issuer is aware that the certificate has been obtained by a protected purchaser. Because Plaintiff does not allege that Saavedra was a protected purchaser and because it is undisputed that Aranda was the heir of the registered owner of the certificate at the time the replacement was issued, we conclude that as to Saavedra the Entity Defendants and Page acted in accordance with their obligations under the UCC when they issued the replacement certificate. *See Smouha v. MTA & J.P. Morgan Chase*, 797 N.Y.S.2d 278, 284 (App. Div. 2005) (noting that compliance with Section 55-8-405 "is a defense even as against a person in possession of the security certificate"). Assuming that the Entity Defendants and Page had notice that Saavedra possessed the original certificate, Plaintiff does not argue that they had notice that she was a protected purchaser. The Entity Defendants and Page were therefore required by Section 55-8-405 to issue the replacement certificate when Aranda requested it.

**{66}** Finally, the requirement that an issuer issue a replacement certificate upon request of the registered owner stems from the fact that the issuer may be entitled to "treat the registered owner as the person exclusively entitled to . . . exercise all the rights and powers of an owner." Section 55-8-207(a). The ability to treat the registered owner as the exclusive person entitled to exercise the rights of an owner ceases, however, upon "due presentment for registration of transfer of a certificated security in registered form" as defined in Section 55-8-207(a). While Saavedra attempted to register the transfer of her certificates in 1990,

19

Plaintiff does not argue that Saavedra met the requirements of Section 55-8-401, and the Entity Defendants' and Page's duty to treat the registered owner as the owner of the certificates was therefore unaffected by Saavedra's unsuccessful attempt to register the certificates.

**{67}** Because the UCC required the Entity Defendants and Page to issue a replacement certificate upon the request of the registered owner and because Aranda was the heir of the registered owner at the time he obtained his replacement certificate in 2004, we conclude that as to Saavedra the Entity Defendants and Page acted in accordance with the UCC when they issued the replacement certificate. *See* NMSA 1978, § 55-8-107 (1996) (explaining that if the registered owner is deceased, the heir has the ability to make instructions regarding the certificate); § 55-8-405 (requiring issuer to issue a replacement certificate upon request from the registered owner).

**2.      Saavedra's Common Law Claims Are Inconsistent with Article 8**

**{68}** Plaintiff contends that despite the Entity Defendants' and Page's compliance with Article 8, Saavedra was still entitled to bring a common law action against them for fraud and conversion. Plaintiff relies on NMSA 1978, Section 55-1-103(b) (2005), which provides that "[u]nless displaced by the particular provisions of the [UCC], the principles of law and equity, including . . . fraud, misrepresentation, duress, coercion, mistake, bankruptcy and other validating or invalidating cause, shall supplement its provisions." In addition, Plaintiff argues that "New Mexico courts continue to deal with a large number of fraud claims involving securities in this UCC subject area without finding a displacement of the common law."

**{69}** We disagree. If a stock issuer acted in violation of its obligations under the UCC, then, as Plaintiff argues, common law claims for fraud or conversion would supplement any remedy provided by the UCC. However, where a stock issuer acts in accordance with its obligations under the UCC, then a common law claim for the conduct required by the UCC would be displaced by the UCC.

**{70}** The cases Plaintiff cites in support of her argument are not persuasive. In *Gallagher v. Santa Fe Federal Employees Federal Credit Union*, 2002-NMCA-088, ¶ 18, 132 N.M. 552, 52 P.3d 412, for example, this Court held that a plaintiff's common law claim for conversion was displaced by the UCC because the UCC specified the conversion liabilities to which a bank can be subject. In addition, in holding that the three-year statute of limitations in the UCC would govern any of the plaintiff's claims that were not displaced by the UCC, we noted that "a statute of limitations applying to any of those claims of a greater period than three years would conflict with the purposes of the UCC." *Id.* ¶ 25. Similarly, in *Venaglia v. Kropinak*, 1998-NMCA-043, ¶ 23, 125 N.M. 25, 956 P.2d 824, we noted that a common law rule that was "directly contrary" to the provisions of the UCC was displaced by the UCC.

**{71}** Here, as in *Gallagher* and *Venaglia*, Saavedra's common law claims are directly contrary to the provisions of the UCC and are therefore displaced. If, as Plaintiff argues, a

stock issuer could be held liable for fraud or conversion for doing what it is required to do under the UCC, then the issuer would have to choose whether to violate the UCC or potentially violate the common law. Had the Entity Defendants and Page refused to issue a replacement certificate upon the request of the registered owner's heir, Aranda, then they would have been subject to liability for disregarding their obligation under the UCC. Thus, we hold that the Entity Defendants' and Page's actions in accordance with their obligations under the UCC displaced Saavedra's common law claims stemming from those actions.

**{72}** Finally, to the extent Plaintiff argues that Saavedra would be left without a remedy if she could not seek relief under the common law, we note that the UCC provides a specific remedy for an individual who purchases a stock certificate for which the registered owner has already obtained a replacement. As we explained above in discussing Saavedra's conversion claims against Aranda, Section 55-8-405 provides the exclusive remedy through which the holder of an original certificate can register the certificate when a replacement has been issued.

**{73}** If, following the issuance of the replacement certificate, Saavedra had established that she was a protected purchaser, then the Entity Defendants would have been obligated to register the original certificate pursuant to Section 55-8-405 and to recover the replacement certificate from Aranda. *See In re Bame*, 252 B.R. 148, 157 (Bankr. D. Minn. 2000) (explaining that if a protected purchaser presents an original certificate to an issuer after the replacement certificate is issued, the issuer would be required to honor both certificates). Had the Entity Defendants refused to register Saavedra's certificate after she established the requisite ownership, Saavedra could have sought to compel registration pursuant to the applicable UCC provisions. *See* § 55-8-401 (explaining an issuer's duty to register transfers). However, Plaintiff has not challenged the Entity Defendants' and Page's refusal to register the certificates when Saavedra attempted to register them in 1990 and again in 2007. That Saavedra chose to pursue an action for fraud and conversion against the Entity Defendants and Page that is inconsistent with the provisions of the UCC rather than the remedy provided by the UCC does not mean that she had no remedy available to her.

### 3. Summary Judgment in Favor of Mellon Investment Services

**{74}** Plaintiff argues that no argument or evidence was submitted to support summary judgment in favor of Defendant Mellon Investment Services (Mellon) and that the district court's dismissal of the claims Saavedra brought against Mellon was therefore improper. Plaintiff contends that nothing was submitted regarding dismissal of the claims against Mellon and that she "accordingly assumed that no claim existed, and filed no response related to Mellon." Contrary to Plaintiff's assertion, the Entity Defendants' motion for summary judgment clearly sought dismissal of the claims against Westland, DevCo, *and* Mellon. That motion listed the three corporate Defendants, noted in a parenthetical that the three Defendants would be collectively referred to as the "Entity Defendants," and sought relief on behalf of the Entity Defendants. Furthermore, in a footnote, the motion noted that because Mellon acted as Westland's agent and because DevCo is the successor-in-interest of Westland, Saavedra's claims against all of the Entity Defendants should be dismissed if her claims against Westland were dismissed. Thus, the motion clearly apprised Plaintiff of

the fact that the Entity Defendants sought dismissal of Saavedra's claims against Westland, DevCo, and Mellon.

## III.    CONCLUSION

**{75}**    For the foregoing reasons, we affirm the judgment of the district court dismissing all of Plaintiff's claims.

**{76}    IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for** _Wilde v. Westland Development Co. Inc._**, Docket No. 28,632**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-FU | Fraud |
| CM-UC | Uniform Commercial Code |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | summary judgment |
| CP-TL | Time Limitations |
| | |
| **EV** | **EVIDENCE** |
| EV-HR | Hearsay Evidence |
| | |
| **PR** | **PROPERTY** |
| PR-LG | Land Grants |
| | |
| **RE** | **REMEDIES** |
| RE-LA | Laches |
| | |
| **TR** | **TORTS** |
| TR-CV | Conversion |

TR-FR                Fraud