2006-NMCA-012

126 P.3d 1215

Steven **NANCE**, individually and as Assignee of Fighting Back Action Training Institute, Inc. and of Simon Heffron, Plaintiff–Appellant,

v.

L.J. **DOLLOFF** ASSOCIATES, INC., a foreign corporation, Defendant–Appellee.

No. 24,979.

Court of Appeals of New Mexico.

Dec. 6, 2005.

Carter Law Firm, P.C., L. Edward Glass, David G. Reynolds, Albuquerque, for Appellant.

Dolan & Domenici, P.C., Peter V. Domenici, Jr., Jeanne Cameron Washburn, Albuquerque, Jampol, Zimet & Wilcox, LLP, Alan R. Jampol, Los Angeles, CA, for Appellee.

## OPINION

FRY, J.

{1}   In this case, we decide which statute of limitations applies to the causes of action in Plaintiff's complaint. Defendant sought summary judgment on the basis of the four-

year statute of limitations applicable to unwritten contracts and all other actions not specifically provided for by statute, NMSA 1978, § 37–1–4 (1880), while Plaintiff argued that his claims were founded on a written contract and therefore governed by the six-year statute of limitations, NMSA 1978, § 37–1–3(A) (1975). The trial court granted summary judgment to Defendant. The trial court also denied Plaintiff's motion for reconsideration in which Plaintiff argued that the statute was tolled because of fraudulent concealment. Plaintiff appeals both orders. We hold that the trial court properly concluded that the statute of limitations had run on Plaintiff's claims and affirm.

## BACKGROUND

{2} In December 1997, Fighting Back Action Training Institute, Inc. (Fighting Back), a karate school in Albuquerque, contacted Bud Dziak of Associated Insurance Professionals, Inc. (Associated) about obtaining liability insurance. Dziak informed Fighting Back that his agency did not represent any insurance carrier that would write a liability policy for a karate school, but that it would be possible to work with an excess and surplus agent who could write such a policy. Dziak then contacted James Gorman, President of L.J. Dolloff & Associates of New Mexico, Inc. (Dolloff New Mexico), a surplus lines broker, about the possibility of writing a policy for Fighting Back. Gorman visited the karate school with Dziak and, after viewing it, indicated that he would bind coverage with Lloyds of London. Dziak completed an insurance application and faxed it to Gorman, asking him to bind coverage. At the same time, Dziak accepted a check from Fighting Back in the amount of $652 to bind the coverage.

{3} On December 12, 1997, Gorman faxed to Dziak a confirmation that coverage was bound with Lloyds pursuant to the terms in the application. Dziak then issued a written binder to Fighting Back confirming coverage.

{4} On January 20, 1998, Plaintiff was injured at Fighting Back. Fighting Back notified Dziak of the claim. Dziak's office faxed a memo to Gorman asking about the status of the liability policy. Associated received a fax from Gorman indicating that he had bound the coverage before receiving Lloyds' underwriting guide, which indicated that Lloyds does not cover contact sports, and stating that the underwriters had insisted that he issue a notice of cancellation. Associated received from L.J. Dolloff & Associates, Inc. (Dolloff New York) a notice of cancellation, even though there was apparently never any policy in existence.

{5} On June 4, 1998, Plaintiff's counsel sent a letter to Dolloff New Mexico stating that Lloyds had been identified as the agent for coverage during the time of Plaintiff's injury. He asked that Plaintiff's claim be directed to the appropriate party. In response, on June 10, 1998, Gorman wrote to Plaintiff's counsel on behalf of Dolloff New Mexico stating that coverage "was verbally bound on December 12, 1997," but that it had been "subsequently cancelled flat." Gorman stated that neither Lloyds nor any other insurer had provided coverage through the Dolloff New Mexico office.

{6} On July 22, 1998, Plaintiff filed a complaint for personal injury against Fighting Bank and two individuals. The trial court in that case entered default judgment against those defendants for $751,022. Fighting Back ceased doing business. Plaintiff then obtained an assignment of all the rights that Fighting Back had against any party for indemnification, contribution, or any other theories of liability related to the incident in which Plaintiff was injured.

{7} On May 2, 2003, Plaintiff filed the complaint at issue in the present case. He sought damages for negligent misrepresentation, breach of contract, unfair practices, and bad faith against Dolloff New Mexico and Dolloff New York. In August 2003, the trial court entered an order granting default judgment for failure to appear against Dolloff New Mexico on the issue of liability. Dolloff New York filed a motion for summary judgment on statute of limitations grounds. After a response and hearing on the motion, the trial court granted summary judgment to Dolloff New York. In its oral ruling, the trial court stated that "there is no contract between Dolloff [New York] and Fighting Back."

{8} Plaintiff then moved for reconsideration arguing that fraudulent concealment had tolled the statute of limitations. The trial court denied the motion on the basis that Plaintiff had not argued the issue of fraudulent concealment at the time of the summary judgment hearing even though Plaintiff had been aware of the facts supporting the argument. The court determined that there was no newly discovered evidence casting doubt on the summary judgment ruling. Plaintiff appeals both the grant of summary judgment and the denial of his motion for reconsideration.

## DISCUSSION

### I. STANDARD OF REVIEW

{9} Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Wiste v. Neff & Co., CPA,* 1998–NMCA–165, ¶ 6, 126 N.M. 232, 967 P.2d 1172. We look at the record as a whole to determine if any genuine issues of material fact exist. *Id.* Where no issues exist, we conduct a de novo review of the trial court's ruling. *Id.* We review de novo the question of whether a particular statute of limitations applies. *Jaramillo v. Gonzales,* 2002–NMCA–072, ¶ 8, 132 N.M. 459, 50 P.3d 554.

{10} We note at the outset that Dolloff New York, which is the only remaining defendant after default judgment against Dolloff New Mexico, assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York. Therefore, in this opinion we refer to Dolloff New Mexico and Dolloff New York collectively as "Dolloff."

### II. STATUTE OF LIMITATIONS

{11} · The critical question in this appeal is whether Plaintiff's claims were founded on a written contract between Plaintiff's assignor (Fighting Back) and Dolloff. Section 37–1–3(A) provides that actions "founded upon . . . [a] contract in writing" must be brought within six years. In *Rito Cebolla Investments., Ltd. v. Golden West Land Corp.,* 94 N.M. 121, 127, 607 P.2d 659, 665 (Ct.App. 1980), we pointed out that an action founded upon a written contract "must be brought for breach of contract, one which requires a policy to do the things for the nonperformance of which the action is brought." We relied on out of state cases explaining when an action is founded upon a contract. In *International Printing Pressmen & Assistants Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1946), the court stated that "founded upon" means the same as though the word "founded" were omitted. *Id.* at 737. Therefore, an action is founded upon a contract if the obligation or liability grows immediately out of the written instrument. *Id.* at 736. The instrument itself must contain a contract to do the thing for the nonperformance of which the action is brought. *Petty & Riddle, Inc. v. Lunt,* 104 Utah 130, 138 P.2d 648, 651 (1942).

{12} Here, Plaintiff stated four claims in his amended complaint: (1) negligent misrepresentation, (2) breach of contract, (3) unfair insurance practices, and (4) violation of the Unfair Practices Act. The basis for his claims was Dolloff's alleged failure to procure insurance coverage for Fighting Back. Thus, as Plaintiff conceded below, in both his oral argument to the trial court and in his written amended complaint and reply to the motion for summary judgment, his claims are related to an alleged contract *for* insurance rather than a contract *of* insurance. This distinction is important because Plaintiff's claims do not seek to hold Dolloff liable on a contract of insurance, but rather for a breach of contract to procure for Fighting Back a valid insurance policy. *See Brown v. Cooley,* 56 N.M. 630, 635–36, 247 P.2d 868, 872 (1952) (drawing a distinction between an agreement of insurance and an agreement to procure insurance). To the extent that Plaintiff, for the first time on appeal, argues that he is suing on a contract of insurance that Dolloff, acting for a fictitious principal, entered into with his assignor, that argument is answered by the familiar maxim that "[w]e review the case litigated below, not the case that is fleshed out for the first time on appeal." *Spectron Dev. Lab. v. Am. Hollow Boring Co.,* 1997–NMCA–025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (internal quotation marks and citation omitted).

{13} Before addressing each of Plaintiff's claims in turn, we note that the record establishes there is no issue of fact regarding the date Plaintiff's assignor's (Fighting Back's) claims against Dolloff accrued. On June 10, 1998, Gorman sent Plaintiff's attorney a letter stating that "no coverage was afforded by Lloyds of London or any other insurer via this office." Thus, on that date, if not before, Plaintiff's assignor (Fighting Back) knew that Dolloff had not procured the insurance requested. *See Hasse Contracting Co. v. KBK Fin., Inc.,* 1998–NMCA–038, ¶ 21, 125 N.M. 17, 956 P.2d 816 (recognizing that "an assignee's interest is subject to all conditions, contingencies, limitations, defenses, and/or set-offs which may be asserted by the ... debtor against the assignor"), *aff'd on other grounds,* 1999–NMSC–023, 127 N.M. 316, 980 P.2d 641.

## A. Negligent Misrepresentation

{14} With regard to Plaintiff's claim for negligent misrepresentation, Plaintiff alleged that Dolloff "made false representations of fact to Plaintiff and/or Plaintiff's agent, Associated, that a CGL [commercial general liability] policy was bound and insurance was in place." Plaintiff contends that Dolloff did not exercise ordinary care in obtaining or communicating the information regarding the insurance to Associated. He alleges that Dolloff should have foreseen that Plaintiff would be harmed if the information conveyed was not correct and that Plaintiff justifiably relied on the information. These allegations clearly set out the elements for a claim of negligent misrepresentation. *See* UJI 13–1632 NMRA (identifying elements that the jury is required to find on a claim of negligent misrepresentation). Thus, this is not a claim that is "founded" on a written contract.

{15} The law of negligent misrepresentation is governed by negligence principles. *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank,* 108 N.M. 84, 88, 766 P.2d 928, 932 (Ct.App.1988). Thus, the person providing the information must have a duty to provide the information, and the person relying on it must have a right to do so. *Id.* The claim arises from the common law obligations among the parties, not from a contract.

Consequently, this claim cannot be viewed as being founded on a written contract, and it is governed either by the four-year statute of limitations applicable to "all other actions not herein otherwise provided for and specified," Section 37–1–4, or by the three-year statute of limitations applicable to negligence actions. NMSA 1978, § 37–1–8 (1976); *cf. Bloom v. Hendricks,* 111 N.M. 250, 253, 804 P.2d 1069, 1072 (1991) (stating but not deciding that negligent misrepresentation claims are governed by the four-year statute of limitations). In any event, Plaintiff filed his complaint after expiration of the limitations period.

## B. Breach of Contract

{16} Plaintiff's second claim alleged a breach of contract. Plaintiff alleged that his assignor, Fighting Back, through its agent, Associated, contracted with Dolloff for insurance coverage. He alleged that Dolloff materially breached the contract by failing to provide the insurance coverage contracted for. The trial court concluded that there was no contract between Fighting Back and Dolloff.

{17} Plaintiff argues that the fax from Dolloff's Gorman to Dziak at Associated was a binder and, therefore, a written contract. A binder is a temporary contract of insurance. NMSA 1978, § 59A–18–22(A) (1984). It is intended to give temporary protection pending investigation of the risk and issuance of a formal written policy. 4 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 18.1 (1998). "A binder is not an insurance policy, but is generally taken to be a contract providing for interim insurance effective as of the date of the application and terminating at either completion or rejection of the principal policy." Lee R. Russ, 1 *Couch on Insurance 3d* § 13.1 (2005). A binder is, nevertheless, a contract of insurance. *See Ellingwood v. N.N. Investors Life Ins. Co.,* 111 N.M. 301, 306, 805 P.2d 70, 75 (1991). However, a contract *of* insurance cannot provide the basis for a claim of breach where the alleged breach of contract was a failure to procure insurance.

{18} Plaintiff conflates a contract *of* insurance with a contract *for* insurance. He

argues that the fax is a binder and a binder is a contract. However, a binder is a contract *of* insurance. It is not a contract *for* insurance. Thus, even if there is a binder, and thus a written contract, it is not a written contract upon which Plaintiff is basing his claim for breach of contract.

{19} A contract is a legally enforceable promise. UJI 13–801 NMRA. To be legally enforceable there must be an offer, acceptance, consideration, and mutual assent. *DeArmond v. Halliburton Energy Servs., Inc.*, 2003–NMCA–148, ¶ 9, 134 N.M. 630, 81 P.3d 573. Plaintiff contends that the fax is a legally enforceable promise by Dolloff to procure insurance for Fighting Back. While the language in the fax might arguably support the view that it is an enforceable promise of the existence of coverage, there is no language in the fax supporting the view that it is a promise to procure coverage. The fax stated, "Bound with Lloyds of London 100% L. Syndicate." It then stated the terms of the coverage, the subject matter, the risk, the amount of insurance, and the premium rate. The fax contained no promise or undertaking on the part of Dolloff to procure coverage. Rather, the fax reflected purported completion of Dolloff's promised task: placement of the risk in the London market on behalf of Fighting Back's agent, Dziak. *See Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392, 160 N.E. 651, 653 (1928) (describing the operation of Lloyds); *Farmers Auto. Inter-Ins. Exch. v. MacDonald*, 59 Wyo. 352, 140 P.2d 905, 914 (1943) (same); *see also* NMSA 1978, § 59A–5–6 (1984) (defining a Lloyds insurer as an unincorporated but formally associated group of separate persons by whom an insurance risk is assumed in whole or part). As Dziak attested, the fax was "confirmation that coverage had been bound with Lloyds of London." Dziak then filled out a printed "insurance binder" reflecting the information in the fax.

{20} Although the evidence might arguably support the conclusion that Dolloff promised orally to procure insurance for Fighting Back, there was no evidence that this promise was ever reduced to writing. The promise reduced to writing in the fax was the promise that there was in fact cover-age (albeit temporary) for the stated risks. In other words, the fax was the written memorandum reflecting Dolloff's performance of its unwritten promise to procure insurance. While it appears that the written contract *of* insurance represented by the fax may have been breached because there was in fact never any coverage—even temporary coverage—by Lloyds, Plaintiff did not sue Dolloff for this breach. Instead, Plaintiff sued Dolloff for breach of the oral agreement to procure insurance—the contract *for* insurance.

{21} We conclude, as did the trial court, that there was no written contract to procure insurance between Dolloff and Fighting Back. Thus, Plaintiff's claim for breach of contract to procure insurance was governed by the four-year statute of limitations for unwritten contracts, and the statute of limitations for claims based upon written contracts does not apply to this claim. Plaintiff filed his claim for breach of contract after the applicable limitations period had expired.

### C. Unfair Insurance Practices and Violation of the Unfair Practices Act

{22} Plaintiff's third and fourth counts alleged unfair insurance practices that violated the Insurance Code, NMSA 1978, §§ 59A–16–1 to –30 (1984, as amended through 2003), and violation of the Unfair Practices Act. NMSA 1978, §§ 57–12–1 to –22 (1967, as amended through 2005). Because these claims were founded on violations of statutes, the claims fall within "other unspecified actions" under the four-year statute of limitations set forth in Section 37–1–4. *See Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir.1982) (applying New Mexico law and determining the limitations period in Section 37–1–4 applies for bad faith insurance claims). Thus, these claims were also filed too late.

### III. MOTION FOR RECONSIDERATION

{23} We review the denial of a motion for reconsideration for an abuse of discretion. *Deaton v. Gutierrez*, 2004–NMCA–043, ¶¶ 9–10, 135 N.M. 423, 89 P.3d 672. In his motion, Plaintiff argued to the trial court

that the statute of limitations should be tolled because of fraudulent concealment. *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 696–98, 858 P.2d 66, 72–74 (1993) (defining fraudulent concealment). The trial court denied the motion on the basis that Plaintiff's motion raised new matters that could have been, but were not, presented at the summary judgment hearing.

{24} In prior cases we have affirmed a trial court's refusal to consider new material presented for the first time in a motion to reconsider. In *Rivera v. Trujillo,* 1999–NMCA–129, 128 N.M. 106, 990 P.2d 219, the trial court excluded an accident report submitted by the plaintiffs in response to the defendants' motion for summary judgment. *Id.* ¶ 13. When the trial court granted the motion, the plaintiffs filed a motion to reconsider and attached a portion of a deposition covering the same ground as the accident report in the hope that the deposition would present an issue of fact. *Id.* ¶¶ 12, 17. The court refused to consider the deposition, which had been available to the plaintiffs before the defendants filed their motion for summary judgment. *Id.* ¶¶ 17–18. We stated that "[t]he only apparent reason for the untimely filing was counsel's failure to do so. Simply, we do not construe rejection of such an untimely argument to have been an abuse of discretion." *Id.* ¶ 19. *See also Deaton,* 2004–NMCA–043, ¶ 9, 135 N.M. 423, 89 P.3d 672 (affirming trial court's refusal to consider documents, which were not previously submitted, filed in connection with a motion for reconsideration where there was no evidence of excusable neglect).

{25} Plaintiff has not persuaded us that the trial court's declining to consider the newly raised defense of fraudulent concealment meaningfully differs from the actions of the trial courts in *Rivera* and *Deaton.* Plaintiff appears to contend that its motion for reconsideration was necessary in order to respond to a new argument Dolloff raised in its reply brief in support of summary judgment. According to Plaintiff, this new argument was that the fax binder could not serve as the basis for Plaintiff's breach of contract claim because Lloyds—not Dolloff—was a party to the fax binder. Yet if, by his own

admission, Plaintiff knew about this argument when Dolloff filed its reply brief, nothing prevented him from responding to this argument at the hearing on the summary judgment motion, which was held the day after the reply brief was filed.

{26} Moreover, we fail to see how the defense of fraudulent concealment responds to the argument Dolloff raised in its reply brief. Plaintiff's argument is that, while he knew there was no insurance coverage shortly after he submitted his claims, Gorman's misrepresentations prevented him from discovering that Gorman had tried to cover up the fact that he had never obtained coverage. In our view, Gorman's alleged cover-up had nothing to do with whether Dolloff was or was not a party to the fax binder. Thus, we cannot say that the trial court abused its discretion in declining to consider the defense of fraudulent concealment raised for the first time in the motion for reconsideration. *See Deaton,* 2004–NMCA–043, ¶ 9, 135 N.M. 423, 89 P.3d 672.

## CONCLUSION

{27} We conclude that the trial court properly granted summary judgment. The four-year statute of limitations applied to Plaintiff's causes of action. The trial court did not abuse its discretion in refusing to reconsider its decision. We affirm.

{28} **IT IS SO ORDERED.**

PICKARD, and SUTIN, JJ., concur.