This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**WILLIAM DUNCAN and**
**DEBRA DUNCAN,**

Plaintiffs-Appellants,

v.                                                                      **No. 33,800**

**PATRICIA ANDREWS, M.D., and**
**THOMAS S. GORMLEY, M.D.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Darren Kugler, District Judge**

Frederick H. Sherman
Deming, NM

for Appellants

Keleher & McLeod, P.A.
Thomas C. Bird
Kathleen M. Wilson
Hari-Amrit Khalsa
Albuquerque, NM

for Appellee Andrews

Krehbiel & Barnett, P.C.
Lorri Krehbiel

Chance A. Barnett
Albuquerque, NM

for Appellee Gormley

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}    Plaintiffs William and Debra Duncan appeal the district court's dismissal of their medical malpractice suit against Defendants Dr. Patricia Andrews and Dr. Thomas Gormley, arguing that the district court's use of dismissal as a sanction for discovery violations was improper. We disagree.

**BACKGROUND**

{2}    In October 2011, Plaintiffs brought a medical malpractice claim against Drs. Andrews and Gormley for their failure to monitor, diagnose, and treat Mr. Duncan's slightly elevated prostate (PSA) test results until the levels indicated that he had an aggressive form of prostate cancer. Defendants requested discovery of Plaintiffs' medical records in November 2011. Plaintiffs informally indicated that they were "working to get" the records, but refused to give Defendants releases so that they might retrieve the records themselves.

{3}    During the discovery period, Plaintiffs scheduled depositions, including of Defendants, without informing opposing counsel. On November 28, 2011, Defendants

moved for a protective order to prohibit Plaintiffs from taking depositions prior to submitting Mr. Duncan's medical records, stating that Defendants would be unable to prepare their defenses until the records were provided. They also moved to compel Plaintiffs to respond to interrogatories and requests for production. At a hearing in March 2012, Plaintiffs stated, "[W]e've provided everything that we have." Defendants noted, however, that they had not received critical information on prior primary care physicians and prescription medications that Mr. Duncan was taking from other doctors while under their care. Plaintiffs acknowledged that such information would be relevant, but again refused to give Defendants releases to obtain the information themselves on the ground that Plaintiffs' counsel should "get[] to see all this stuff first."

{4}     The district court concluded that "discovery needs to be far more complete than it is at this time," and ordered Plaintiffs either to provide full medical records for the past ten years or to "file specific motions for protective orders or claiming privilege." If the Plaintiffs were unable to obtain the full records by April 15, 2012, the court required them to provide releases so Defendants could attempt to obtain the records themselves. At the court's request, defense counsel put the verbal decision into a form written order. Plaintiffs refused to sign the order because it did not include language permitting them to withhold documents on "privacy" grounds. They did not articulate

3

any objections to the order in writing, as required by Rule LR3-212(F)(4) NMRA. At a second hearing on April 10, 2012, the district court confirmed the order's existing language, adding only that Plaintiffs were obliged to disclose the medical records within ten days of their receipt. The order was finally filed on April 24, 2012.

{5}     Over a year later, on June 6, 2013, Defendants filed a second motion to compel, stating that Plaintiffs had failed to "provide answers and responses to Defendant[s'] written discovery requesting a medical authorization," as well as a "comprehensive and true" list of all Mr. Duncan's medical providers. Though some depositions had already been taken, Defendants had "recently become aware of a substantial number of additional medical providers not listed in Plaintiff[s'] answers" and consequently realized that it was "uncertain" whether Plaintiffs had disclosed all the information required of them under the April 24, 2012 order. Defendants had made a second set of written discovery requests in April 2013 because they had received neither the complete medical records nor the releases necessary to seek such information themselves. Plaintiffs still refused to provide certain information, citing concerns over privacy and relevance. They also did not provide any medical authorization or releases to Defendants.

{6}     Defendants' second motion to compel included records from Dr. Tami Breton, Mr. Duncan's primary care physician from 1998 to 2004, immediately before he came

4

under Defendants' care. Defendants had not received any records from Dr. Breton, which they argued were "vitally important to [their] defense because Dr. Breton had discussed with Mr. Duncan the significance of his Prostate Specific Antigens (PSAs) . . . and ordered PSA tests." Defendants had attempted to request the records from Dr. Breton directly, but Plaintiffs had not released them to do so. Plaintiffs indicated to both Defendants and the district court that all good faith efforts had been made to obtain the records, but that they were "unavailable." Plaintiffs did not provide documentary evidence of any attempts to acquire the records.

{7}     When Dr. Breton was deposed on July 16, 2013, she arrived with over a hundred pages of medical records. Both parties were "surprised." Dr. Breton stated that Mr. Duncan's records had been in storage, but to her knowledge she had not received any medical release or request from Plaintiffs. She testified that according to her custom and practice, any such request received would have been in her files. She did have a copy of a request by Dr. Andrews, which had been denied for lack of authorization.

{8}     Defendants moved to dismiss Plaintiffs' suit with prejudice as a sanction for their failure to participate in discovery. Defendants argued that discovery from Plaintiffs had been erratic and incomplete, with relevant records from years earlier continuing to arrive far past the deadline in the April 24, 2012 order. All told,

Defendants identified thirty-eight medical providers indirectly revealed during the course of discovery from whom they had not received complete records. Plaintiffs argued that they had "followed [the April 24, 2012] order to the minute," and denied ever being informed that the records were not complete.

{9} The court held that "disclosure is not being provided by [P]laintiffs in a timely fashion," characterizing the process as a "discovery war." The court stated that since Plaintiffs had not provided the complete medical records by the deadline specified in the April 24, 2012 order, discovery sanctions were appropriate. Initially, it ordered Plaintiffs to provide general medical releases to both Defendants' counsel within ten days. After a hearing on the matter, however, it concluded that the situation merited more dramatic sanctions. The case was dismissed with prejudice on January 21, 2014.

{10} Following dismissal, Plaintiffs moved for reconsideration, producing documentation of the medical authorization form sent to Dr. Breton. The form requested the release of records dated after February 11, 2008. Mr. Duncan was not a patient during the specified period, rendering the authorization ineffective; Dr. Breton's assistant noted that no records existed from 2008 because Mr. Duncan had last been seen in 2004.

{11} The district court denied the motion for reconsideration, holding that "Plaintiffs failed to conduct discovery in good faith" and therefore that dismissal with prejudice

6

was appropriate. Plaintiffs appeal from that decision.

**DISCUSSION**

*A.    Standard of Review*

{12}    When a district court imposes sanctions for discovery violations, up to and including dismissal, we apply an abuse of discretion standard in our review. *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶ 10, 129 N.M. 639, 11 P.3d 603. An abuse of discretion occurs "when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). We defer to the fact finder when evidence both supports and detracts from the decision because "merely identifying the existence of evidence which may have tended to support a different outcome does not demonstrate an abuse of discretion." *Camino Real Envtl. Ctr., Inc. v. N.M. Dep't of the Env't.*, 2010-NMCA-057, ¶ 23, 148 N.M. 776, 242 P.3d 343.

*B.    Discovery Sanctions Were Justified in This Case*

{13}    Under Rule 1-037(B) NMRA, a district court may impose dismissal as a sanction for violation of discovery orders in cases where "the failure to comply is due to willfulness, bad faith, or fault of the disobedient party." *Medina v. Found. Reserve*

*Ins. Co., Inc.*, 1994-NMSC-016, ¶ 6, 117 N.M. 163, 870 P.2d 125. "When a party has displayed a willful, bad faith approach to discovery, it is not only proper, but imperative, that severe sanctions be imposed to preserve the integrity of the judicial process and the due process rights of the other litigants." *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 397, 96 N.M. 155, 629 P.2d 231; *see also Allred ex rel. Allred v. Board of Regents of the Univ. of N.M.*, 1997-NMCA-070, ¶ 34, 123 N.M. 545, 943 P.2d 579 ("Although dismissal under Rule 1-037 is an extreme sanction, district courts have a *duty* to enforce compliance with rules of discovery, and they should not shirk from imposition of the sanction of dismissal." (alteration, internal quotation marks, and citation omitted)). Dismissal is therefore appropriate both when a plaintiff acts with deliberate bad faith and when he simply exhibits "gross indifference to discovery obligations." *Medina*, 1994-NMSC-016, ¶ 6; *Reed*, 2000-NMCA-091, ¶ 24 ("The district court, as the arbiter of discovery, can determine whether a party has abused the discovery process.").

{14}     Prior to dismissal of Plaintiffs' suit, the district court expressed concern because "the discovery process has been pretty tortured in this case." Dr. Breton's records, among several others, should have been disclosed under the April 24, 2012 order. The order provided a specific deadline and required that all records be disclosed or releases provided before depositions could proceed. Plaintiffs failed to comply with the order

in three ways: first, they did not obtain the complete records before the specified deadline; second, they did not provide releases to Defendants after being unable to obtain the records themselves; and third, they proceeded with depositions "at some significant expense" to Defendants while properly discoverable information still had not been disclosed, thus meriting discovery sanctions.

{15}     Defendants argued that Plaintiffs' failure to produce records like Dr. Breton's suggested bad faith, because the records contained information favorable to their case. Other circumstances also support the district court's conclusion that Plaintiffs' conduct reflected "willfulness, bad faith, or fault" in the discovery process. *Medina*, 1994-NMSC-016, ¶ 6. Throughout discovery, Plaintiffs both refused Defendants direct access to the providers via releases and simultaneously culled documents and information they deemed "irrelevant" from what they did disclose without maintaining a privilege log. In one example, Plaintiffs refused to provide information regarding an ear, nose, and throat specialist Mr. Duncan saw because it "has nothing to do with this case." At the same time, they claimed that Mr. Duncan's "nose bleeds and his treatment for his nose bleeds are [D]efendant's responsibility because he has a coagulopathy" as a result of Defendants' treatment of his prostate cancer. More than once, Plaintiffs submitted medical bills to Defendants that listed previously unknown providers, including after Plaintiffs had provided affidavits claiming that complete

records had been provided. The district court accordingly found that "Plaintiffs failed to identify key medical providers in the discovery process."

{16} The district court is "not required to impose lesser sanctions before it imposes the sanction of dismissal." *Id.* ¶ 7. It may also base dismissal on a single instance of misconduct. *See Beverly v. Conquistadores, Inc.*, 1975-NMCA-070, ¶ 15, 88 N.M. 119, 537 P.2d 1015 ("The fact that persistent misconduct provides the basis for dismissal does not mean that one instance of misconduct may not be sufficiently extreme to warrant dismissal."). In the context of discovery, a false response "is a clandestine violation." *Sandoval v. Martinez*, 1989-NMCA-042, ¶ 21, 109 N.M. 5, 780 P.2d 1152. Such misconduct is so egregious that even a single instance warrants dismissal. *Beverly*, 1975-NMCA-070, ¶ 15.

{17} In this case, the district court had identified many prior instances of less substantial interference with discovery but concluded that Plaintiffs' failure to provide Dr. Breton's medical records was itself severe enough to warrant sanctions. The severity of the violation stemmed from Plaintiffs' insistence to both the district court and Defendants that the records could not be obtained after all good-faith efforts. As the district court noted, "an interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response; it's worse than no response."

{18} The district court questioned Plaintiffs specifically as to Dr. Breton's records, noting that Mr. Duncan had obtained a PSA from that doctor and "must have at least been concerned there were other records from Dr. Breton," including prior PSAs. It asked Plaintiffs to provide evidence of their attempts to obtain the records, but Plaintiffs did not produce any authorization release forms, letters, or other written requests that had been submitted to Dr. Breton. Plaintiffs offered only an affidavit of a staff member who stated that she spoke with someone in Dr. Breton's office on the telephone. In light of Plaintiffs' inability to offer more substantial evidence, the district court found that Plaintiffs had failed to demonstrate due diligence and a good-faith effort to conduct discovery properly.

{19} Though Plaintiffs later produced more evidence of their attempts to contact Dr. Breton's office, that evidence "could have been discovered prior to the dismissal of this case." It was therefore not "new" for the purposes of reconsideration, which is a sufficient basis for denial. *Nance v. L.J. Dolloff Assocs. Inc.*, 2006-NMCA-012, ¶ 24, 138 N.M. 851, 126 P.3d 1215. The untimely evidence was in fact "consistent with" the district court's determination that Plaintiffs failed to act in good faith; the authorization Plaintiffs presented contained an improper date range, apparently consisted of phone log entries rather than more formal written authorization requests, and had been sent to Dr. Breton's office several months after Mr. Duncan had signed

the release without explanation for the delay. The district court acted appropriately in denying the motion for reconsideration on these grounds.

**CONCLUSION**

**{20}** For the reasons stated above, we conclude that the district court did not abuse its discretion in dismissing Plaintiffs' medical malpractice suit for discovery violations.

**{21}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**