This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37912

**LUIS H. VIGIL,**

Petitioner-Appellee,

v.

**BYBEE L. LUDWIG-VIGIL,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary W. Rosner, District Judge**

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Santa Fe, NM

for Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Paola V. Jaime Saenz
Albuquerque, NM

Ofelia Infante-Garcia
Mesilla, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Petitioner Bybee Ludwig-Vigil (Wife) appeals the district court's determination of her community interest in Respondent Luis Vigil's (Husband) retirement benefits and denial of her motion for reconsideration. On appeal, Wife argues the district court

erroneously valued her share of Husband's retirement benefits based on the current cash-out value, rather than the present value of the future benefits as of the date of divorce. Additionally, Wife argues the district court erred by initially agreeing, then later refusing, to hear expert testimony proffered by Wife regarding the valuation she sought, resulting in an erroneous denial of Wife's motion for reconsideration. We affirm.

**BACKGROUND**

**{2}**     The parties were married on January 14, 2012, and divorced on June 21, 2017. Husband began working for Las Cruces Public Schools (LCPS) in September 2011. Through Husband's employment with LCPS, he established an Educational Retirement Board (ERB) retirement plan. In February 2018, the district court held an evidentiary hearing (the February hearing) to determine Wife's interest in Husband's retirement. The district court heard testimony from Husband's expert witness, Don Beasley, a certified public accountant, who testified as an expert in the area of pension valuation regarding Wife's interest in Husband's retirement. Mr. Beasley testified that he calculated the value of Husband's retirement benefits upon the date he would be eligible to retire—in 2027—to be $132,981.49. Mr. Beasley stated that his calculation was based on certain assumptions, including that (1) Husband would continue working until he became eligible for retirement; (2) Husband would continue to be employed at a consistent salary level; and (3) typical annual salary increases would continue, a factor conditioned on the State continuing to consistently fund the retirement plan. Incorporating these assumptions alongside the duration of marriage—just over five years of the six total during which Husband had been employed by LCPS at the time of divorce—Mr. Beasley concluded that Wife's current interest in Husband's retirement benefits was $8,321.28, less any taxes, of the then $19,971.07 total existing balance.

**{3}**     Wife's counsel objected to Mr. Beasley's determination of Wife's interest in Husband's retirement benefits, requesting that the district court direct Mr. Beasley to complete a second calculation "using the fraction for years of [Husband's] service and years of marriage multiplied by the present value of the benefit that [Husband] already derived," stating an expectation that the amount derived from this second calculation would be higher than $8,321.28. While not entirely clear in its phrasing, Wife's counsel essentially asked that Mr. Beasley calculate Wife's interest in the $132,981.49 of Husband's expected total retirement that would theoretically be available in 2027, in addition to Mr. Beasley's initial calculation which valued Wife's interest in the already-existing $19,971.07 of Husband's benefits. The district court granted Wife's counsel's request.

**{4}**     Following the February hearing, Mr. Beasley submitted a report outlining the additional calculations he completed that stated the following:

> Our testimony [on February 27, 2018,] was that the value of [Wife's] interest in [Husband's] retirement was $8,321.28[,] . . . based upon the contributions made for [Husband] through his employment at [LCPS]. We prorated the value based upon the total employment time related to the

time of marriage. We allocated 41.67% to [Wife]. Counsel for [Wife] requested a valuation of the future benefit to [Wife] if she does not take a lump sum payment but rather takes an annuity at the time of [Husband's] retirement. At full retirement, [Wife] would receive a lump sum of $22,507.12 or an annuity of 16.93% of [Husband's] retirement[.] . . . The present value of that benefit is $18,696.66 but many factors have to occur for that to be the result.

The report went on to clarify that, because there were "significant unknown factors," including Husband's continued employment, information concerning his future salary, ERB's ability to maintain a 7.5% return on investments with the fund, and whether or not the State would continue to fund the retirement plan [at its current level]—"the valuation of future benefits is not able to be calculated." Mr. Beasley advised that the "only options" he thought were available to the district court were to either use his initial valuation of Wife's interest in the amount of $8,321.28 or "[e]stablish [a qualified domestic relations order] with proceeds paid to [Wife] based upon known facts at the time of a triggering event." Mr. Beasley closed the report by recommending the first option as the "better, more equitable decision." Following the submission of Mr. Beasley's report, in a response to Husband's request for attorney and expert witness fees, Wife requested that the district court allow Wife's newly proposed expert, Michael Foley, to testify to his own conclusions regarding the value of Wife's interest in Husband's retirement, which were set forth in an attached report.

{5}     In its order following the February hearing, the district court stated that it reviewed the report by Mr. Foley as provided by Wife, even though the report was never admitted into evidence, noting that both Mr. Foley and Mr. Beasley had "good credentials" and were undeniably experts in their respective fields. The court ultimately declined to rely on Mr. Foley's report because his calculations for Husband's total projected benefits earned were "not reasonable given the duration of the marriage and the modest marital estate." Instead, the district court relied on Mr. Beasley's recommendations and determined that Wife's interest in Husband's retirement benefits was $8,321.28, less the 17% that would be deducted to allow for state and federal income tax withholdings. The district court ultimately ordered Husband to pay Wife $6,906.66 within sixty days, or by an alternate installment payment option including interest.

{6}     Wife filed a motion for reconsideration in response to the district court's order, and a hearing on Wife's motion was scheduled for November 26, 2018 (the November hearing). On November 15, 2018, Wife filed an additional motion to allow Mr. Foley to appear at the November hearing telephonically, which the district court granted. When Wife's counsel introduced Mr. Foley at the November hearing, the district court—despite having filed an order granting Wife's motion to allow Mr. Foley's telephonic appearance—stated that it would not hear further testimony in ruling upon Wife's motion for reconsideration. Wife's counsel reminded the district court of its prior contrary order, after which a discussion between the parties and the district court ensued. The court

stated that motion had been granted in error, and noted that Mr. Foley's testimony could have been, but was not, offered as evidence during the February hearing.

**{7}** Following the November hearing, at which no further testimony was provided, the district court denied Wife's motion for reconsideration. Wife appeals the district court's order following the February hearing as well the district court's order denying Wife's motion for reconsideration.

## DISCUSSION

### I.  The District Court Did Not Err in Valuing Wife's Interest in Husband's Retirement Benefits

**{8}** On appeal, Wife argues the district court erred in valuing Wife's interest in Husband's retirement benefits "based on the current cash-out value" rather than on the "present value of the future benefits on the date of divorce." Typically, a district court's distribution of community property is reviewed for abuse of discretion. *Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285. Here, because Wife's argument regarding the method of dividing Husband's retirement benefits presents a question of the district court's application of law to the facts, we review this issue de novo. *See Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 21, 147 N.M. 625, 227 P.3d 115 ("Whether the correct law has been applied and whether the district court accurately applied the law to the facts are reviewed de novo.").

**{9}** "[I]t is axiomatic that each spouse in a marriage has a present, vested, one-half interest in the spouses' community property." *Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 28, 116 N.M. 52, 860 P.2d 182. "[R]etirement benefits are a form of employee compensation and are community property." *Id.* ¶ 14. "New Mexico cases state clearly that a spouse is entitled to a community share of the portion of retirement that is vested but unmatured at the date of divorce." *Mattox v. Mattox*, 1987-NMCA-021, ¶ 6, 105 N.M. 479, 734 P.2d 259. A "vested" retirement plan is a property right that an employed spouse acquires "as a part of the compensation of an employee which is not subject to unilateral forfeiture or recision [sic] by the employer without terminating the employment relationship." *Copeland v. Copeland*, 1978-NMSC-011, ¶ 5, 91 N.M. 409, 575 P.2d 99, *holding modified on other grounds by Schweitzer v. Burch*, 1985-NMSC-119, ¶ 6, 103 N.M. 612, 711 P.2d 889. A vested retirement plan "matures" when an employed spouse "is entitled to receive the benefits which he has earned through the years and is eligible to retire." *Id.* ¶ 6.

**{10}** In determining a spouse's interest in a community share of vested but unmatured retirement benefits, there are two relevant considerations: (1) the method of *division* of benefits and (2) the method of *distribution* of benefits. While Wife's primary contention in this case centers on the method of division of Husband's benefits, and not the method of distribution of such benefits, consideration of both division and distribution methods is necessary to our analysis. We therefore briefly pause to clarify the meaning of applicable terminology employed in the context of division and distribution of benefits

such as Husband's—that is, vested, unmatured, and partially accrued—retirement benefits.

**{11}** Regarding the method of division of an interest like Husband's retirement benefits, New Mexico courts often, though not exclusively, begin by ascertaining what is referred to as the interest's "present value." *See Mattox*, 1987-NMCA-021, ¶ 5 ("To value unmatured pension benefits, the [district] court must determine their present value."). The term "present value" is in many ways a misnomer, since the meaning relates not literally to the present value of one's retirement benefits, but rather to the value of one's benefits once matured, or, in other words, to the *future* value of one's current retirement benefits. *See id.* ("Present value is the amount which must be invested at present to produce a required number of annual payments of a given amount, or a required future total investment, including retained interest, at a stated rate of interest over a specified number of years." (internal quotation marks and citation omitted)).

**{12}** When determining the method by which to distribute a spouse's interest in the employee spouse's retirement benefits, there are two basic distribution methods a court may choose to employ: (1) a "cash value" or "lump sum" distribution, or (2) a "pay as it comes in" or "reserved jurisdiction" distribution. As *Ruggles* explains, under a "cash value" or "lump sum" distribution method, "retirement plan benefits are awarded to the employee spouse at the time of dissolution [of the marriage] and assets of equivalent value are awarded to the nonemployee spouse," whereas under a "pay as it comes in" method, a nonemployee spouse will receive payments of his or her share of the employee spouse's retirement benefits when the employee spouse actually retires and begins to receive payment of the vested and matured pension benefits. 1993-NMSC-043, ¶¶ 2, 23. In the latter methodology, "the court does not distribute the community interests at the time of dissolution, but reserves jurisdiction to distribute the benefits when the employee spouse actually receives them." *Id.* ¶ 23. The "cash value" or "lump sum" distribution method is preferred, "not only because it eases the parties' transition following dissolution, but also because it furthers the important goal of minimizing future contact and conflict between divorcing spouses." *Id.* ¶ 31.

**{13}** Although it seems apparent that only the cash value or lump sum methodology was employed herein, and that Wife indeed sought such a distribution insofar as she did not seek reserved jurisdiction for future distribution, our review of the record suggests there to be some inconsistency and possible confusion as to the relevant terminology during the hearings, and within the parties' briefing. For example, while Wife argues that the district court erred in not following the "present value" method of dividing Husband's retirement benefits, our review of the record indicates that Mr. Beasley used precisely that method for valuing and awarding Wife's interest in Husband's retirement benefits. At the February hearing, Mr. Beasley correctly defined present value during his testimony, stating that in relying on such methodology, "[t]he present value would be the amount that someone would pay at the current time for a future benefit or future stream of income." He then testified that his initial calculations represented the "present value of the benefit when [Husband] completely retires, and then assuming a stream of

income after retirement based on his life expectancy from the Social Security Administration," and resulted in a valuation of Husband's present value retirement benefits of $132,981.49. Mr. Beasley's testimony makes clear that his valuation of Husband's retirement benefits was based on the present value of the benefits at such time that Husband could retire—precisely the methodology, if not the result she sought, Wife now argues should have been employed. Indeed, given that Mr. Beasley testified that he frequently conducted present value calculations for pension plans, there is no basis in the record to doubt his understanding and application of "present value" terminology and methodology.

**{14}** Wife's trial counsel insisted that Mr. Beasley's calculations represented merely a "cash–out" division rather than the present value division that she argued was legally required under *Ruggles*. At the same time, however, Wife's counsel stated at the February hearing that Wife was asking for a lump sum *distribution*, which is not mutually exclusive of a present value *division* of benefits. Moreover, in its order following the February hearing, the district court referred to Mr. Beasley's methodology as resulting in both "present value calculations" and "cash out value" calculations. Despite this apparent conflation of terminology, we are able to conclude on the record before us that the district court did not abuse its discretion in dividing Husband's retirement benefits based on Mr. Beasley's expert recommendation, and further conclude that the district court's order does not conflict with *Ruggles* or other applicable precedent, notwithstanding Wife's arguments to the contrary. Indeed, Wife mischaracterizes *Ruggles* in an attempt to support her argument regarding the division of Husband's benefits.

**{15}** The specific issue in *Ruggles* was "whether a nonemployee spouse should receive [his or] her community interest in a retirement plan, or begin to receive it, upon dissolution when the employee spouse's interest is vested and matured, or should be required to wait until retirement benefits are actually paid before receiving, or beginning to receive, [his or] her share[.]" 1993-NMSC-043, ¶ 24 (footnote omitted). The issue in that case was not the method by which a court must *divide* the employee spouse's retirement benefits, as is the issue raised by Wife here, but rather how a court should *distribute* such benefits. On appeal, Wife argues that *Ruggles* requires present value calculations as the basis of any valuation of a spouse's interest in an employee spouse's retirement benefits. *Ruggles* contains no such requirement. As stated by the *Ruggles* Court: "Although we hold in this opinion that a nonemployee spouse is entitled to an immediate distribution when dissolution occurs after the employee spouse's interest is vested and matured, that distribution, if made in a lump sum, *does not necessarily equal the present value, discounted only for interest, of the employee's future pension payments.*" *Id.* ¶ 47 (emphasis added). Indeed, the only time a present value calculation is required under *Ruggles* is in a situation where the dissolution of marriage occurs after the employee spouse's benefits have vested *and* matured. *Id.* ¶ 48. Such is not the case here, as Husband's benefits were vested but not matured.

**{16}** Contrary to Wife's assertions, *Ruggles* "leave[s] the choice of method, as well as its implementation, to the sound discretion of the [district] court—subject, however, to

the preference we have expressed in favor of the lump sum, present value, cash-out method of distribution." *Id.* ¶ 50. A preference, however, does not a mandate create. "Because in New Mexico, absent an agreement regarding calculation of benefits, there is no set rule for determining every case involving the division of retirement benefits, it appears that the district court is to exercise its wisdom, sound reasoning, and sound discretion to divide this asset." *Gilmore*, 2010-NMCA-013, ¶ 36. But here, given that the district court's division is consistent with *Ruggles*, we see no basis on which we should second-guess the district court's exercise of discretion. Based on the record before us, we find no error in the district court's reliance on Mr. Beasley's expert testimony and opinion in exercising its discretion to divide Husband's retirement benefits as ordered and, therefore, hold that the district court did not err in awarding Wife her interest of the benefits in the total, after-tax amount of $6,906.66. Stated differently, we cannot conclude that the district court abused its discretion by considering Mr. Beasley's opinion that—due to the particular facts surrounding this case, including the relatively short lengths of both the parties' marriage and Husband's employment during that marriage—the appropriate valuation of Wife's interest in Husband's retirement benefits was the after-tax amount of $6,906.66. While Wife contends the district court was required by *Ruggles* to value her interest at a higher level—based on apportionment of Husband's theoretical, eventual total retirement benefits should he work until 2027 under the assumptions acknowledged by Mr. Beasley's additional calculations—we conclude that *Ruggles* presents no such requirements and hold that, on the record before us, the district court did not err in valuing Wife's interest in Husband's retirement benefits.

## II.    The District Court Did Not Err in Refusing to Allow Further Testimony or Denying Wife's Motion for Reconsideration

**{17}**    On appeal, Wife argues the district court erred in refusing to allow Wife's proposed expert, Mr. Foley, to testify at the hearing on Wife's motion for reconsideration and that such refusal resulted in the district court's erroneous denial of Wife's motion for reconsideration. As this argument pertains to a denial of a motion for reconsideration as well as a decision regarding admission of testimonial evidence, we review for abuse of discretion. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628 (**"**We review the denial of a motion to reconsider for abuse of discretion."); *see also Behrmann v. Phototron Corp.*, 1990-NMSC-073, ¶ 17, 110 N.M. 323, 795 P.2d 1015 (explaining that the district court has "a great deal of discretion in admitting or excluding evidence, and we will reverse the [district] court only when it is clear that the court has abused its discretion"). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). We will not find an abuse of discretion unless (1) the district court's ruling can be characterized as "clearly untenable or not justified by reason[,]" or (2) "the court's ruling exceeds the bounds of all reason or is arbitrary, fanciful or unreasonable." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127 (internal quotation marks and citations omitted).

**{18}** There are two discrete issues involved in Wife's argument: (1) whether the district court erred in refusing to allow Mr. Foley to testify, and (2) whether the district court erred in denying Wife's motion for reconsideration. We address each in turn.

## A. The District Court's Refusal of Mr. Foley's Testimony

**{19}** Wife argues that the district court erred in initially granting an order allowing Mr. Foley to testify telephonically but ultimately refusing to allow his testimony at the November hearing. The crux of Wife's argument regarding Mr. Foley's testimony is not whether the district court should have allowed him to testify—which, in itself, was not an abuse of discretion, *see Behrmann*, 1990-NMSC-073, ¶ 17—but whether the district court should have allowed him to testify in light of its signed order granting his telephonic appearance.

**{20}** Central to Wife's argument of this issue is her contention that at the February hearing, Wife's counsel mistakenly believed Mr. Beasley to be a court-appointed witness rather than a party witness. We are not persuaded. During the February hearing, Husband's counsel stated he wanted to call Mr. Beasley as the first witness. The district court directed Husband's counsel to begin his examination of Mr. Beasley—stating "Counsel, your witness"—and proceeded to direct Husband's counsel to qualify Mr. Beasley as an expert. During examination of Mr. Beasley, the district court clarified that an exhibit was prepared by Mr. Beasley, asking him whether the exhibit "was prepared in the ordinary course of your—the reason that you were hired by [Husband's counsel]?' Husband's counsel asked Mr. Beasley whether he would be charging fees and whether he would be willing to submit a bill to "us"—meaning Husband's counsel and Husband—following the hearing. The record clearly establishes that Mr. Beasley was Husband's witness and that Wife's counsel was reasonably on notice of that fact.

**{21}** Wife also argues that because the district court granted—apparently in error—her motion to allow Mr. Foley to appear telephonically, the court should be bound by that order and remand to allow his testimony. We take this opportunity to emphasize that we review district court proceedings not in an isolated context but in a continuum of occurrences culminating in the appeal before us. Here, despite the district court having signed an order granting Wife's motion to allow Mr. Foley to testify, we conclude there was nothing improper about the way in which the district court ultimately conducted the hearing on Wife's motion for reconsideration. The district court in this case evaluated existing evidence, and we see no error and ascribe no material meaning to the district court judge's seemingly inadvertent signature on the order granting Wife's motion. Moreover, the district court went so far as to consider Mr. Foley's report—despite it never being admitted as evidence in the case—and declined to rely on its findings based, not on any disregard for Mr. Foley's work or expertise, but rather on a finding that Mr. Foley's calculations were unreasonable given the factual context of the case. It is entirely within the district court's discretion to consider and then to decline testimony. *Id.* ¶ 17. Accordingly, on the record before us, we find no abuse of discretion by the district court in refusing to allow testimony by Mr. Foley.

**B.     The District Court's Denial of Wife's Motion for Reconsideration**

**{22}**     Wife next argues the district court erred in denying Wife's motion for reconsideration after refusing to allow Mr. Foley to testify at the November hearing. Our review of the record reveals no reason why Mr. Foley did not or for some reason could not have testified at the February hearing, aside from Wife's counsel's own failure to secure Mr. Foley as a witness prior to the February hearing. Again, we are wholly unpersuaded by Wife's argument that her trial counsel was unaware that Mr. Beasley was a party witness rather than a court-appointed witness. Wife's counsel had ample opportunity to secure Mr. Foley as a testifying witness prior to the February hearing. Instead, Wife did not obtain Mr. Foley's report, dated March 12, 2018, until after the February hearing.

**{23}**     In effect, Wife's request for Mr. Foley to testify was a request to present new evidence on a motion for reconsideration. We have consistently "affirmed a [district] court's refusal to consider new material presented for the first time in a motion to reconsider." *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 24, 138 N.M. 851, 126 P.3d 1215; *see also Wilde*, 2010-NMCA-085, ¶¶ 35-38 (explaining that there is no abuse of discretion when the district court denies a motion for reconsideration where a party presents previously available evidence); *Rivera v. Trujillo*, 1999-NMCA-129, ¶¶ 17, 19, 128 N.M. 106, 990 P.2d 219 (stating that in denying a motion to reconsider, the district court properly exercised its discretion not to consider deposition testimony previously available to the moving party).

**{24}**     Here, we conclude that the district court properly exercised its discretion in not allowing Mr. Foley to testify, considering Wife's trial counsel could have either proffered him as a witness at the February hearing or sought to admit Mr. Foley's report into evidence—rather than merely attaching the report to a motion. Indeed, we see no indication that Mr. Foley's testimony was unavailable before the February hearing—or that Wife could not have taken steps to obtain a report from Mr. Foley before that time— and, on appeal, Wife does not identify any reason why such evidence would have been previously unavailable to Wife. In any event, the district court considered and rejected Mr. Foley's valuation as set forth in his report. Because the record indicates Mr. Foley's testimony was previously available to Wife, we find no abuse of discretion by the district court in its denial of Wife's motion. Moreover, "[w]hen there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323. Because ample evidence exists in support of the district court's denial of Wife's motion, in contrast to Wife's arguments to the contrary, we hold the district court did not abuse its discretion in denying Wife's motion for reconsideration.

**CONCLUSION**

**{25}**     Based on the above we affirm the district court's order determining Wife's community interest in Husband's retirement benefits.

**{26}** IT IS SO ORDERED.

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**